CLINTON SPECIAL TERM, February, 1851.    *Hand,* Justice.

### ˙ALLEN *vs.* STONE.

Where a person commenced a suit before a justice, in the name of another, pretending to be the assignee of a claim in favor of the latter against the defendant, and appeared as attorney for the nominal plaintiff, on the trial, falsely swearing to his authority to do so, and on appeal by the defendant, retained an attorney to appear for the respondent, and afterwards to defend a writ of error; *Held* that the nominal plaintiff was not bound by the acts of the attorney until after he had notice of the suit.

*Denton* v. *Noyes,* (6 *John.* 296,) overruled.

But where process is served upon a party, and there is an appearance by an unauthorized attorney, the party will not be relieved if the attorney is responsible.

THIS was a motion by Stone, the defendant in error, to set aside an execution against him, issued on a judgment docketed in October, 1850 ; or for a perpetual stay thereon.

It appeared by the affidavits, that in 1845, one Chalmers, since deceased, who had before then been employed as a printer by Stone, in Plattsburgh, the residence of Stone, Chalmers then residing in Whitehall, the residence also of Allen, got some one to make up an account in favor of Stone against Allen for advertising in the paper of the former the hotel of the latter, pretending that Stone had assigned the account to him. He then commenced a suit against Allen, before a justice, in Whitehall, in the name of Stone, on that account, and recovered a judgment. Chalmers appeared before the justice as the attorney of Stone, and swore to his authority to do so. But this was shown by his own admissions to be false ; he stating that he had a difficulty with Allen about a liquor bill, and would get judgment against him if he could. Allen carried the cause to the Washington common pleas. Chalmers retained an attorney, and the judgment was affirmed. Allen, in April, 1847, brought error to this court, and Chalmers retained an attorney to defend the writ of error also. And the writ of error was set aside on the argument, in March, 1849, and execution for the costs issued ; Chalmers claiming the amount thereof. But this court vacated the

rule setting aside the writ of error, and in January, 1850, the judgment of the common pleas was reversed with costs. Stone was informed casually, in July, 1849, by two of his neighbors, that a suit was pending in Washington county between him and Allen. The affidavits of Stone and Allen were somewhat conflicting on the point of previous knowledge on the part of Stone. In September, 1849, Allen went to Plattsburgh to see Stone, and as Stone stated, desired him to pass receipts in full of all accounts, but Stone declined, giving as a reason that he did not know the purpose. Allen stated that he offered to settle, but that Stone said he would go to Whitehall to see his lawyers. Stone did write to the attorneys at Whitehall, conducting the suit in his name, and inquired about the matter, and received an answer that the suit had been brought by Chalmers, who had retained them, they supposing Chalmers the owner of the demand. The brother-in-law of Chalmers swore to the admissions of the latter, that Stone had no knowledge of the suit. It was shown that the attorneys appearing in Stone's name, were perfectly responsible.

*P. G. Ellsworth*, for the motion.

*H. Gibson*, contra.

HAND, J. The affidavits of the parties are somewhat conflicting as to the time when Stone first knew of the pendency of the suit; which is, no doubt, attributable to mere forgetfulness on the part of one of them. Both appear to be very candid, and are only struggling to rid themselves of a burden attempted to be cast upon one of them, through the fraud and crime, (judging from the affidavits,) of another person. One affidavit however, states the admission of both Chalmers and Allen, repeatedly, that Stone was ignorant of the existence of the suit, and therefore, as a matter of fact, I can not find that he had knowledge of the pendency of the suit until about the 1st of May, 1849. Had he moved in the cause after that, as a beneficial party, I think he would have been considered as ratifying the past acts of the

Allen *v.* Stone.

attorneys on record. (*Lawrence* v. *Taylor,* 5 *Hill,* 113. *Paley on Agency, by Dunlap,* 324. *Benedict* v. *Smith,* 10 *Paige,* 126. 2 *Hill,* 175. 5 *Id.* 137.) And mere silence, having knowledge, may be sufficient. (*Delafield* v. *Illinois,* 2 *Hill,* 175. And see note to *Dundas* v. *Dutens,* 1 *Ves. jr.* 201. 1 *Barb. Ch. Pr.* 227. *Cameron* v. *Barker,* 1 *C. & P.* 268.) Though there must be knowledge. ( *Williams* v. *Read,* 3 *Mason,* 403.) But it seems that Stone was informed he had no interest in the suit, and fearing he might, in some way, be considered as adopting the acts of the attorneys, did not interfere.

There can be little doubt, that the suit was commenced by one Chalmers, who falsely pretended to be the assignee of a real or pretended claim in favor of Stone against Allen ; and that his pretensions to authority to appear before the justice for the nominal plaintiff, were there sustained by perjury. If that be the case, it is similar to that of a forged power of attorney. That in ordinary cases, is utterly void for all purposes. By fraud, sustained by his own oath, he deceived the parties, the court and the respectable attorneys whom he employed. The cause was removed by Allen to the court of common pleas by certiorari, and afterwards to this court by writ of error. But, as he was struggling to defend himself throughout, I think his rights, substantially, are those of a defendant. It has been said, that on a writ of error, the recital in the record, that A. B. appeared as attorney, is evidence of that fact. (1 *Wels. H. & Gor. note.*) Perhaps it is so, *prima facie,* but it can be rebutted; otherwise, after judgment, there could never be any inquiry as to that fact.

It is contended that the appearance of Stone by attorney, is sufficient for the court, and not a subject of inquiry on the part of Allen. There are some cases, which seem to favor that position. (*Anon. Salk.* 86. *Anon. Id.* 88. 1 *Keb.* 89. *Godb.* 74. *Gray* v. *Gray,* 2 *Rolle's R.* 63. *Denton* v. *Noyes,* 6 *John.* 296. *Stanhope* v. *Firman,* 3 *Bing. N. C.* 301. *Harris* v. *Gilbert,* 9 *Wend.* 499. *McCullough* v. *Guetner,* 1 *Binn.* 214.) This rule, however, has been qualified, where the attorney is insolvent. (*Denton* v. *Noyes, supra. Harris* v. *Gilbert,* 9

*Wend.* 499. *Anon.* 1 *Salk.* 88.) That a man's rights may be affected, and he, perhaps, ruined by the act of an attorney whom he never employed, and may never have known, and without any notice whatever, is a position that must be sustained, if at all, by mere force of authority. It has no foundation in reason or justice, is intolerable in practice, and contrary to a fundamental principle that every man should have a day in court before he is condemned. It also violates another principle, that one can not act for another without authority express or implied. And it is pretty difficult to see, why one for whom the attorney professes to act, and not he that deals with the pretended agent, should be turned over to the latter for redress, thereby reversing the ordinary rule in such cases. By what reasoning can a solvent attorney be said to be retained, and an insolvent one not? His solvency has nothing to do with the fact of retainer. And why should one who in fact has never been in court, and is ignorant of the very existence of the suit, be responsible, as against one who has throughout been an actual party litigant? The case of *Denton* v. *Noyes* was that of a defendant, and was decided mostly upon the *dicta* of Lord Holt in two short anonymous cases in *Salkeld.* But I think Mr. J. Van Ness showed the defendant was entitled to relief, and it has always been considered a hard case.

*Meacham* v. *Dudley,* (6 *Wend* 515,) was a case of negligence of an attorney, and relief was granted. Savage, C. J. said, the rule was hard, as laid down in *Denton* v. *Noyes.* And this he substantially repeated in *Grazebrook* v. *McCreedie,* (9 *Wend.* 437,) where the defendants were partners. *Adams* v. *Gilbert,* (9 *Wend.* 499,) is very briefly reported, and seems to accord with *Denton* v. *Noyes.* The defendants were applicants for relief in those three cases, and the opinions were delivered by C. J. Savage, and the rule in *Denton* v. *Noyes,* somewhat modified. Until this court shall see fit to disregard the latter case, perhaps in this state, at least so far as mere costs are concerned, if the attorney be responsible, a party defendant, for whom he has assumed to act, must look to him. And I will not say the rule is different in chancery, with either party. (*Am. Ins. Co.* v. *Oak-*

*ley,* 9 *Paige,* 498.   *Wilson* v. *Wilson,* 1 *Jac. & W.* 457.
*Wade* v. *Stanley, Id.* 674.   *Dundas* v. *Dutens,* 2 *Ves. jr.* 200.)
But, at law, the rule in England now is, that if the party has
had no notice of the suit an appearance by an authorized attor-
ney is void.   But if process has been served upon him, he will
not be relieved if the attorney is responsible.   (*Bayley* v. *Buck-
land,* 1 *Wels. Hurl. & Gord.* 1.   *Dupen* v. *Keeling,* 4 *C. & P.*
102.   *Emerson* v. *Brown,* 7 *M. & G.* 476.   *Doe* v. *Eyton,* 3
*B. & Ad.* 785.   *Robson* v. *Eaton,* 1 *T. R.* 62.   *Holker* v. *Par-
ker,* 7 *Cranch,* 436.   *Crichfield* v. *Porter,* 3 *Ham. R.* 518.
*And see Field* v. *Gibbs,* 1 *Pet. C. C. R.* 158; *Ruckle* v. *Roach,*
2 *Chit. R.* 193; *Hubbart* v. *Philips,* 13 *M. & W.* 702.   *Camp-
bell* v. *Bristol,* 19 *Wend.* 101.   *And see note to Bayley* v.
*Buckland, supra, and the American cases there cited.)*

In *Robson* v. *Eaton,* under a forged power of attorney, a suit
was conducted to judgment, which the defendant paid, and this
was held to be no defence to a second suit.   In *Bayley* v. *Buck-
land,* the attorney general said *arguendo,* the case in *Salkeld* was
loosely reported ; and that " it is a strange doctrine to hold, that
the party's responsibility will depend upon the solvency or in-
solvency of the attorney.   The rule does not appear to be found-
ed upon principle."   In that case, without service of process
upon the defendant, the plaintiff had accepted the appearance
of an unauthorized attorney, and the judgment was set aside,
with costs.   In *Hubbart* v. *Philips,* the proceedings were stay-
ed, and the attorney made to pay costs, on the motion of the de-
fendant, in a suit brought without authority, although it was
objected that the plaintiff, only, could make the motion.   In
*Doe* v. *Perkins,* (2 *Chit. R.* 170,) and in another case mentioned
in a note, (*Id.* 170,) a verdict in favor of the plaintiff was set aside
for want of authority.   From the remarks of counsel, in *Hub-
bart* v. *Philips,* it seems these motions were on the part of the
plaintiff.   Thus either party there can move to set the proceed-
ings aside and that the attorney pay costs.   In *Campbell* v.
*Bristol,* (19 *Wend.* 101,) there had been judgment against the
plaintiff in an action of replevin prosecuted by an insolvent attor-
ney, and of which the plaintiff had no knowledge until execu-

---

tion. The court set aside the execution, and granted a perpetual stay, on the plaintiff stipulating *not to bring any action.* This condition must have been imposed on the ground of the invalidity of the proceedings, and accords with *Robson* v. *Eaton.*

I think there is good sense and justice in the rule that where the party has no notice whatever of the suit, the proceedings do not bind him. Attorneys are such persons as take upon them the charge of the business of other men, by whom they are retained. (*Terms of the Law,* 5, *b.*) And for a time a party could not appear by attorney, but afterwards was allowed to do so by statute, upon an express authority which should have appeared on the record. (9 *Vin.* 553.) And they were considered officers of the court. Now, upon admission, very few, even take the oath to support the constitution.

Stone must pay the costs of Allen, accruing after the 1st of May 1849, with costs of this motion ; and upon so doing, there must be a perpetual stay of the execution.

Ordered accordingly.

*Note.* This order was affirmed on appeal, at the Saratoga general term, in January, 1852; Willard, P. J., Hand, Cady and C. L. Allen, justices.

