R. H. BINGHAM, Appellant, *vs.* THE BOARD OF SUPERVISORS OF WINONA COUNTY, Respondents.

APPEAL FROM THE DISTRICT COURT OF WINONA COUNTY.

An order setting aside a stipulation settling the issues to be tried, and allowing an amendment to an answer, is appealable.

Such a stipulation has, by virtue of the statute, the force of a contract, and cannot be disturbed except upon such grounds as would be sufficient to set aside any other contract between the par- ties. Such settlement of the issues by stipulation should have as much effect as their determina tion by the verdict of a jury, and the same, or as strong reasons are required to set aside such stipulation as would be required to set aside a verdict.

The mere fact, that a party by such stipulation has waived defences, which he might otherwise urge, is not sufficient ground for setting aside such stipulation. It must appear that the stipula- tion was obtained by fraud or collusion, accident, or surprise, or some ground of this nature, to justify the setting aside of the same.

The District Court has jurisdiction to try all actions against a county.

The Appellant, who was Treasurer of Winona County, brought his action in the Court below, to recover certain fees and charges which he claimed to be entitled to under the statutes, for services for preparing lists of delinquent taxes, advertising and selling the lots therein described, and executing certificates of sale to the County of Winona, the purchaser at the tax sales. That the said certificates amounted to one thousand six hundred and seven, which embraced and included therein 1757 separate parcels of land; for which he claimed to be entitled to the sum of seventy-five cents for each of said certificates, and the sum of five cents for each additional parcel included in said certificates.

That the Board of Supervisors had refused to pay the demand, and claimed judgment for $1,212.75 and interest.

The Defendant appeared by one A. S. Seaton, the then County Attorney, and answered, admitting the performance of the services by the Plaintiff, as County Treasurer, as stated in the complaint, and that the number of certificates was 1607. But denied that the said certificates embraced or included therein 1757 separate parcels of land; it further denied the indebtedness claimed in the complaint, admitted an indebtedness of $88.55—"being the sum due for the making of said certificates and five cents for each additional description of land so bid off to said County." The answer further set up a counter claim of $2,583.81, for moneys had and received by Plaintiff belonging to Defendant.

The reply put in issue all the new matter alleged in the answer. On the 16th June, 1860, the parties, by their respective Attorneys of record, entered into the following stipulation :

" It is hereby stipulated and agreed, by and between the parties to the above entitled action, that all the facts alleged and charged in the Plaintiff's complaint herein, and each and every one of them be upon the trial of this cause admitted to be true by the Defendants, and that no question of law or fact shall be submitted or urged before the Court, by either party, ether than that which relates to the amount of fees

which the Plaintiff is entitled to recover under the statute regulating fees in such cases."

On the 19th of June, 1861, William H. Yale, Esq., having succeeded said Seaton as County Attorney, moved that this stipulation be set aside, and for leave to serve an amended answer. The motion was based upon the following affidavit:

" County of Winona, *ss.* William H. Yale, of the city and county of Winona, being duly sworn, says: That at the annual election held in Winona county, in the fall of 1860, this deponent was elected County Attorney for the County of Winona, and that afterwards, to-wit: on the first day of January, A. D. 1861, this deponent, having first duly qualified, entered upon the discharge of his duties and has been ever since and is now acting as County Attorney for the County of Winona.

"That by some means now unknown to this deponent, this deponent was informed that a suit had been commenced against the above named Defendant, whereupon this deponent immediately made application to A. S. Seaton, deponent's predecessor as County Attorney for Winona county, and Attorney of Record in the above entitled action for Defendant, for the pleadings and proceedings had in said action; that said Seaton repeatedly promised this deponent that he would give said papers to this deponent the next day; that this promise was repeated as many as twenty different times, on as many as twenty different days.

"And deponent further says, that he has been unable to obtain pleadings from the said Seaton, although he made repeated applications and used much diligence. That this deponent had no means of knowing and did not know the particular nature of the suit, or whether the same had ever been noticed for trial or not, or at what stage of the proceedings the same had arrived.

" And deponent further says, that on the 12th day of June, A. D. 1861, he obtained and saw for the first time copies of the pleadings from Messrs. Sargeant & Franklin, Attorneys for the Plaintiff; that the said complaint is founded upon a demand made by R. H. Bingham, against the county of Winona, for certain fees alleged by him to have accrued during the

spring of 1859, while he, the said R. H. Bingham, was acting as Treasurer of the county of Winona, amounting in all to the sum of $1,212.75.

" And the answer to said complaint, which is in the hand writing of the said A. S. Seaton; and signed by him as Attorney for the county of Winona, admits nearly every allegation of the complaint to be true, and very imperfectly denies any at all, and in fact admits that a portion of the claim is just and legal, and does not sufficiently deny any part of the complaint.

" And deponent further says, that afterwards, to-wit: on the 16th day of June, A. D. 1860, a stipulation in the hand writing of Mr. Franklin, one of the Counsel of Plaintiff, was entered into and signed by the said A. S. Seaton, Attorney for the Defendant, stipulating away all of the defences but one, a copy of which stipulation is attached to this affidavit marked Schedule A, and made a part of this affidavit.

" And deponent further says he is informed and believes that the said claim of the Plaintiff is wholly unjust and void as against the Plaintiff. That in truth and in fact the defendant has four several and separate answers or defences to the claim of the Plaintiff :

" *First*—That the statutes did not authorize a sale at that time, from the fact that the returns of the Collectors were not made till the latter part of February, A. D. 1859.

" *Second*—That if the statutes authorized any sale to take place at that time, the same was void for the reason the same was not advertised four weeks prior to said day of sale.

" *Third*—The Plaintiff having once presented his claim to the Board of County Supervisors of Winona county, and they having finally adjudicated the same, the Plaintiff is precluded from coming into this Court with the same claim.

" *Fourth*—If the sale was authorized by statute and public notice was properly given, then and in that case the said R. H. Bingham had no right to execute but one certificate to Winona county without orders to that effect, and for that he would be entitled to only seventy-five cents for the certificate, and five cents for each additional description of land."

Upon the argument of this motion the following affidavit of A. S. Seaton, Esq., was read :

" County of Winona, *ss.*   A. S. Seaton, of the county aforesaid, being duly sworn, deposes and says, that William H. Yale, Esq., now acting Attorney for Defendants in the above entitled action, was informed of the commencement of said action, and conversed with this deponent about said suit at various times prior to his entering upon the duties of his office, and this deponent further says that when first applied to for said pleadings and proceedings by said Yale, this deponent informed him that he would find said papers on file in the office of the Auditor of said county, that this Defendant had only had them therefrom to use in his defence of said action, and then returned them to that office.   And this deponent further says, that the answer in this action, drawn by this deponent and referred to in said Yale's affidavit, was so drawn after a thorough search and investigation of the records and papers of the said Defendant, and examination of the facts in the case, and the admissions therein made were based upon the facts as ascertained by said investigation ; and all of which facts this deponent believes to be true.

" And this deponent further says, that the said stipulation in this case, and mentioned in said Yale's affidavit, was made by this deponent after a thorough and careful investigation of the subject matter in controversy, and from such investigation this deponent believed and still does believe, that he did not stipulate away any defence to said action, either legal or equitable, and that this deponent made such stipulation with a view solely to strip said cause of extraneous matters, and try said cause upon what said investigation convinced this deponent was the only point in said cause, and the sole defence to said action."

The Court below ordered that the stipulation be set aside, and that Defendants have leave to amend their answer.

The Plaintiff appeals from this order.

Bingham v. Board of Supervisors of Winona County.

Points and Authorities of Plaintiff in Error.

I.—The Court erred in granting the motion :

1st. At common law, where nothing more than the ordinary relation of attorney and client exists, the latter is bound, as between him and the opposite party, by every act which the former does in the ordinary course of practice, and without fraud or collusion, however injudicious that act may be. *Latuche vs. Pesherante*, 1 *Salk.*, 86; *Griffiths vs. Williams*, 1 *J.R.*, 710; 1 *Graham's Prac.*, 3d ed., 236. No fraud or collusion is pretended to exist in this case.

2d. If an attorney, by negligence, suffers judgment by default, submits to a nonsuit, withdraws the record, or confesses the action, his client is bound. So he may discontinue the action, waive a judgment by default, refer a cause, enter a *remittitur damna*, give a cognovit, or the like—may stipulate, as a condition of obtaining a continuance of a cause for the term, that the action shall not abate by the death of his client before the trial—may refer a cause to arbitrators, with an agreement that the award shall be final—may waive all informalities and irregularities—may stipulate, out of court, concerning the facts in the case, and his client is bound by all such acts and stipulations. *Lush's Prac.*, 219; *Anonymous*, 1 *Salk.*, 86 ; *Lailler vs. Smart*, 6 *Cow.*, 385; *Reinholdt vs. Alberti*, 1 *Binn.*, 485; *Felmer vs. Delber*, 3 *Taunt.*, 486; *Lamb vs. Williams*, 1 *Salk.*, 89; *Clark vs. Gray*, 1 *How.*, *P. R.*, 128; *Ames vs. Webber*, 10 *Wend.*, 575 and 624; *Wilson vs. Young*, 9 *Barr*, 101, *Hanson vs. Hortt*, 14 *N. H.*, 56; *Lewis vs. Sumner*, 13 *Mich.*, 269; *Alton vs. Silmanton*, 2 *N. H.*, 520; *Part* 1, *Cow. & Hill's Note*, 3d ed., 366; 1 *Graham's Prac.*, 3d ed., 236.

3d. Even where an attorney appears without authority, his client is bound by his acts, and if he suffers damages in consequence thereof, he must look to the attorney. *Anonymous*, 1 *Salk.*, 86 and 88; *Denton vs. Noyes*, 6 *J. R.*, 296.

4th. The same is true of the authority of attorneys in Courts of Equity. *Bethel Church vs. Cormack*, 2 *Md.*, *Ch.*

*Decis.*, 143; *Thornberg vs. Macauley*, 2d *Md. Ch. Decis.*, 425; *Lawson vs. Betteson*, 7 *Eng.*, 401.

5th. In this State the common law rule is declared to its fullest extent by Statute.. An attorney is authorized to bind his client in any of the proceedings in an action or special proceeding, by his agreement duly made in writing; and his agreement so made is as binding as if made by his client, or entered on the record of the court. *Comp. Statutes Minn.*, 667, *sec.* 10.

II.—In this case, the attorney, by virtue of his office, possessed all the power and authority in the premises of both attorney and client :

1st. A District Attorney in the State has the sole and exclusive power and control over, in and about all civil suits, applications, or motions in the District Court in which his county is interested as a party. *Comp. Statutes of Minn.*, 164, *sec.* 3.

The order of the Court below should be reversed.

Points and Authorities of Defendant in Error.

I.—The order appealed from is not an appealable order, therefore the appeal ought to be dismissed. *Session Laws*, 1861, *page* 133; *Howard's N. Y. Code*, *p.* 537; *Ib.*, *P. R.*, *vol.* 10, *p.* 90; *Ib.*, *P. R.*, *vol.* 21, *p.* 97; *N. Y. Court of Appeal*, *vol.* 18, *p.* 150; *Ib.*, *vol.* 11, *p.* 276; *Ib.*, *vol.* 16, *p.* 242; *Ib.*, *vol.* 21, *p.* 531; *E. D. Smith*, *N. Y. City*, *vol.* 2, *p.* 223; *Minn.*, 4, *p.* 227.

II.—Setting aside the stipulation and releasing therefrom, is nothing more than granting leave to amend the pleadings ; one is involved in the other, and the leave to amend necessarily destroys the stipulation.

III.—An attorney has no right to stipulate away any valid defences which his client may have, without express authority from that client.

IV.—The affidavit on which the motion was made, is not contradicted on any material point, by the counter affidavit of A. S. Seaton ; it must, therefore, be taken to be true ; but even if contradicted in every material part, the Court, in its discretion, could believe what it chose, and act accordingly.

V.—A motion to amend the pleadings at any time before trial, is proper, and in accordance with our practice, and courts will not inquire into the merits of the proposed amendments, further than to see that they are not plainly frivolous. *Stat. of Minn.*, p. 544, sec. 94; *Howard's P. R.*, vol. 11, p. 170; 4 *Cowan*, 555; 7 *Wisconsin*, 540.

VI.—The Court has an undoubted right to release parties from a stipulation on motion of either party, on the ground of fraud, mistake, surprise, negligence, ignorance or improvident admissions. 13 *Howard, P. R.*, 26; 19 *Ib.*, 193; 16 *Ib-* 144; 1 *Cowan*, 117; 6 *Wend.*, 515; 9 *Wend.*, 437; 32 *Barbour*, 134; 1 *Story, Eq. Jur.*, 251, 134; 1 *Hoffman's Ch. Pr.*, 28, 24; 10 *Barbour*, 547; 33 *Ib.*, 603.

VII.—The Court would release a county from the stipulation of a County Attorney, made without express authority, for less cause than they would an individual, who could be supposed to know more of what his counsel were doing.

VIII.—The Court would permit the amendment and release from the stipulation for less cause, for the reason that no harm is done the Plaintiff, nor is he in any manner prejudiced by the setting aside of the stipulation.

IX.—The stipulation is a fraud on the Defendants, for however innocently procured on the part of the Plaintiff, it takes from the Defendants two separate and complete defences in law, which, by the terms of the stipulation, they are prevented from raising.

X.—The stipulation in question is a fraud on the Defendants, for the further and conclusive reason that it essays to give jurisdiction to the Court indirectly, by stipulating that the Defendants will raise no question, either of law or fact ; that it will not call in question the jurisdiction of the Court, when, in fact, the Court had no jurisdiction, and therefore could not gain it even by stipulation ; for the only place where this matter could be settled, was with the Board of Supervisors of Winona county. On page 160 of the Statutes of Minnesota, the Treasurer is directed to settle his account with the Board of Commissioners. If that law was repealed by the township Act of 1858, on page 198 of the Statutes, the Treasurer is ordered to " exhibit all his books and accounts,

and all vouchers relating to the same, to be credited, and on page 154, power is given to the Board of Commissioners to examine and settle all accounts of the receipts and expenditures of the county, and on page 194, of the Statutes, power is given to the Board of Supervisors, to credit all accounts chargeable against their county, and to direct the raising of such sums as may be necessary to defray the same ; and to audit means to examine, settle and adjust, or, in other words, to determine how much, if any is due from the county ; and the decision of the Board of Supervisors was final in such matters, prior to the passage of the law of 1852, which gives the right to appeal from the decisions of the Board of Supervisors, unless it was a claim that you could compel the Board to pay by mandamus.

In this cause the remedy of the Plaintiff was to either appeal from the decision of the Board of Supervisors, or (the amount which the Plaintiff claims, being for a statutory fee easily computable,) to have compelled the Board by mandamus. If the county can be sued in a matter of this kind, it opens the door for thousands of vexatious suits which the framers of our laws never intended should occur. 20 *Barb.*, 294; 2 *Sanford*, 460; 6 *Seldon*; 260; 18 *Johnson*, 242; 9 *Wen.* 508; 10 *Wend.*, 363.

SARGEANT & FRANKLIN, Counsel for Appellant.

WM. H. YALE, Counsel for Respondent.

*By the Court.*—ATWATER, J.—The authority of an attorney to bind his client, as defined by *s.* 10, *p.* 667, *Comp. Stats.*, extends to " any of the proceedings in an action or special proceeding duly made, or entered upon the minutes of the court." This provision is sufficiently broad to cover a stipulation of the kind here presented, and it is binding upon the client, until he is relieved therefrom, by proper order of the Court, or due course of law.

The Counsel for the Respondent claims that the order is not appealable, on the ground that setting aside the stipulation and releasing therefrom, is nothing more than granting leave

to amend the pleadings ; that one is involved in the other, and the leave to amend necessarily destroys the stipulation.   In this position the Counsel we think is mistaken.   The stipulation is, in substance, a settlement of the issues to be tried. The parties have a perfect right to make such an agreement, and having made it, it has, by virtue of the Statute, all the binding force of any other contract, and is not to be disturbed except upon such grounds as would be sufficient to set aside any other contract between the parties.   At least I think this settlement of the issues by stipulation, should have as much effect as their determination by the verdict of a jury, and that it should require the same, or as strong reasons to set the stipulation aside, as would be required to set aside a verdict. The setting aside this stipulation, is much more than simply allowing an amendment of the pleadings.   To regulate the form of the issues, strike out irrelevant or improper matters, or allow additional allegations, where the parties have made no agreement respecting the same, may properly be considered matters within the discretion of the Court, and its order thereon not the subject of appeal.   In such case it is understood that the parties arrange the pleadings and settle the issues with the aid of the Court, in case of disagreement between them.   But when the parties, upon full deliberation and consideration, have formally agreed, in writing, that such and such and no other, shall be the issue, a court has no right to annul the agreement, on the suggestion or proof that the party has waived rights that might be advantageous to him. The parties are in a different position with regard to their respective rights, from what they would have been, had they left their issues entirely for the Court to determine.   As the stipulation has been set aside, we think the order appealable.

It remains, therefore, to consider whether there was any sufficient cause shown for setting aside this stipulation.   The only evidence upon which the Court acted, so far as appears from the case, were the affidavits of Yale and Seaton, which appear in the return.   The affidavit of W. H. Yale, Esq., the acting County Attorney, sets forth all the facts upon which the Defendant grounds his claim for relief.   That states in substance, that the answer interposed by Seaton, the former

County Attorney, admits nearly every allegation of the complaint to be true, and very imperfectly denies any at all; and that "a stipulation, in the handwriting of Mr. Franklin, one of the counsel for the Plaintiff, was entered into and signed by the said A. S. Seaton, attorney for the Defendant, stipulating away all the defences but one. That in truth and in fact the Defendant has four several and separate answers or defences to the claim of the Plaintiff," setting forth the substance of the same.

There is no allegation that any fraud was practised upon the Defendants or their attorney, by which the latter was induced to sign the stipulation, nor of any collusion between the attorney and Plaintiff. No mistake, accident, or surprise is asserted, nor that the attorney was not fully aware of all the defences of which his client could avail himself, and of the nature and effect of his stipulation. And even any presumption that such matter exists in justification or excuse, is rebutted by the affidavit of A. S. Seaton, Esq., who states, "that the said stipulation in this case, and mentioned in said Yale's affidavit, was made by this deponent after a thorough and careful investigation of the subject matter in controversy, and from such investigation this deponent believed, and still does believe, that he did not stipulate away any defence to said action, either legal or equitable," &c. And indeed, it nowhere appears, that the Defendant did not have full notice of the action of his Attorney in the premises, and did not consent thereto; and in the absence of any evidence to the contrary, it must be presumed that such was the case, as in the management of a cause, an Attorney is presumed to be acting under the authority and by the direction of his client.

Upon the facts here presented therefore, we see no ground whatever, upon which the Court could properly interfere to set aside this stipulation. Even had fraud been alleged against the County Attorney, and collusion between him and the Plaintiff, whereby the Defendant was prejudiced, it is extremely questionable whether the relief asked would be granted, without showing the insolvency of the Attorney. (6 *John.*, 296; 6 *Wen.*, 514; 9 *Wen.*, 437; *Id.*, 499; 1 *Binn.*, 214; 10 *Barb.*, 547.) If the Defendant has in fact the de-

fences set up in his amended answer, it would seem that he has made an improvident agreement in waiving them; but that circumstance alone, is not sufficient ground for relieving a party from the consequences of his own voluntary act. Such disregard of the binding force of obligations is not to be regarded with favor, nor would it be consonant with sound reason and established precedents, that it should receive the deliberate sanction of a Court of Justice.

The Respondent claims that the Court had no jurisdiction over this case, and that jurisdiction could not be given by stipulation where it had none originally. In the latter part of the proposition he is correct, and it becomes therefore necessary to inquire, whether aside from the stipulation the Court could entertain a suit of this nature, and had jurisdiction to adjudicate upon a claim of this kind.

The counsel cites in support of his proposition, *Sec.* 6, *p.* 198, *Comp. Stat.*, which provides that "at the annual meeting of the Board of Supervisors, or such other times as they shall direct, the County Treasurer shall exhibit to them all his books and accounts, and all vouchers relating to the same, to be credited and allowed." Also *Sub.* 5, § 13, *Comp. Stat.*, *p.* 154, *and Sub.* 2, § 4, *Comp. Stat.*, *p.* 194. As to whether these provisions of statute oust the District Court of jurisdiction of an action of this kind, it is unnecessary now to inquire, since they are all repealed by *Chap.* 3 *and* 15 *of the Session Laws of* 1860. *Chap.* 15, *p.* 131, *Sess. Laws* 1860, defines the powers and duties of County Commissioners; and their authority with regard to settling claims, is prescribed in *Sec.* 23 of said chapter, which provides that the Board of Commissioners shall have full power to examine and settle all accounts of the receipts and expenditures of the county, and shall have the care of the county property and the management of the county funds and business, except in cases otherwise provided for, but shall exercise no other powers than such as are given by law." The counsel for the Respondent relies strongly (among others,) upon the cases in New York, citing 20 *Barb.*, 294, 2 *Sand.*, 460, and 6 *Sel.*, 260. The statute of that State upon which these decisions were based, reads as follows, viz.: "to examine, settle and allow all accounts chargeable against

such county ; and to direct the raising of such sums as may be necessary to defray the same." 1 *N. Y. Rev. Stat.*, *p.* 675, *Sub.* 2, *Sec.* 2, 4*th Ed.* And by *Sec.* 23, *p.* 680, " every chairman shall have power to administer an oath to any person, concerning any matter submitted to the Board, or connected with their powers or duties." The difference between the two statutes is manifest, that of New York being much broader than our own. And we find no provision at all in our statute, authorizing the chairman or any member of the Board to administer an oath, without which it is manifest, the examination of accounts must be often extremely unsatisfactory, and without which indeed, it must frequently occur that no just settlement could be made.

But again, we find it provided in *Sec.* 8, *p.* 132, *Sess. Laws* 1860, that " all actions, local or transitory, against any county may be commenced and prosecuted to final judgment in the District Court of the county against which the action is brought." And in *Sec.* 7, *p.* 136, of the same act, in which the powers and duties of the Commissioners are defined, *it is* provided that they may, "in like manner, by and under their name of office, be sued by any person or persons having any manner of claims against such county." We find no such provisions in the New York statute, and indeed, it differs in other respects than those above quoted, very widely from our own, with reference to the powers and duty of County Commissioners. The provisions above quoted from the law of 1860, are so clear and explicit, that we think no doubt can be entertained but that the Legislature intended that the District Court should have jurisdiction of actions, such as the one at bar, and indeed of any claims that may arise against the County. The policy of such a law may well be questioned, but with that, Courts have nothing to do.

We think the Court below erred in setting aside the stipulation, and granting leave to amend, and the order must be reversed.