[No. 1511.]

STANTON–THOMPSON CO., A CORPORATION, APPELLANT, v. E. CRANE, MARY E. CRANE, AMELIA H. HOWARD AND A. G. STILES, RESPONDENTS.

ATTORNEY-AT-LAW—PRESUMPTION UPON APPEARANCE OF. It is now well settled that a regular attorney appearing in an action will be presumed to have authority so to do, without warrant.

IDEM—UNAUTHORIZED ACTION OF—GROUNDS FOR RELIEF FROM JUDGMENTS. It is now the practice to relieve parties from judgments rendered against them in consequence of the acts of unauthorized attorneys, without regard to the ability of the attorney to respond to his assumed client in damages.

PRACTICE—RELIEF FROM JUDGMENT—LACHES. Under the provisions of section 68 of the civil practice act (Gen. Stats. 3090), which provides among other things, that when, from any cause, the summons and copy of complaint in an action have not been personally served upon a defendant, the court may allow such defendant, on such terms as may be just, any time within six months after the rendition of any judgment in such action, to answer to the merits: *Held*, that where defendants were not so personally served with summons, and where judgment had been rendered against them in the action or an appearance for them by an authorized attorney, they were not guilty of laches where they commence proceedings to set aside the judgment at any time within the six months from the date of the judgment.

IDEM—COSTS. It was not error to permit such defendants to answer without requiring payment by them of incurred costs.

APPEAL from the District Court of the State of Nevada, Washoe county; *A. E. Cheney*, District Judge:

Action by the Stanton-Thompson Company against E. Crane and others to set aside certain conveyances by E. Crane to his daughters, defendants Amelia H. Howard and A. G. Stiles, as in fraud of creditors, in which judgment was rendered against all the defendants by default. Afterwards defendants Howard and Stiles filed a motion to set aside and vacate the judgment, and for leave to answer and defend, on the ground that no copy of the complaint and summons had been served on them, and that they had never employed or authorized any attorney to appear for them, or entered any appearance in said case. From an order permitting said defendants to answer to the merits upon filing a bond for the payment to plaintiff of the costs and damages, if any, sustained by reason of a trial, in the event that it should finally recover judgment against such defendants, plaintiff appeals. Affirmed.

The facts sufficiently appear in the opinion.

*Trenmor Coffin*, for Appellant:

I.   The demurrer and objections to the sufficiency of the notices and affidavits of the moving defendants should have been sustained.   They failed to show or suggest that General Clarke who appeared for them, or their brother, E. O. Crane, who employed him, were insolvent or unable to respond in damages, or that there was any fraud, collusion or misrepresentation or unfair dealing or want of good faith towards defendants.   (*Suydam* v. *Pitcher*, 4 Cal. 281; *Holmes* v. *Rodgers*, 13 Cal. 191; *Sampson* v. *Ohlyer*, 22 Cal. 201–210; *Denton* v. *Noyes*, 6 Johnson, 298, 5 Am. Dec. 237; American Decisions, notes and authorities on p. 244; *Abbott* v. *Dutton*, 44 Vt. 546; *Cyphert* v. *McClune*, 22 Pa. St. 195, 197.)

II.   The motion to open the default of defendants, Mrs. Howard and Mrs. Stiles, and for leave for them to answer was made upon the. ground that they had not been served with summons and that they had not authorized General Clarke to appear for them.   In all cases there is a legal presumption that a regularly licensed and practicing attorney in any court of record is authorized to represent the litigants for whom he appears.   This presumption can be overcome only by the strongest, most cogent and convincing proof.   In this case this presumption, supported by the positive testimony of General Clarke as to his employment, cannot be overthrown by the uncertain and equivocal testimony of E. O. Crane, who was acting, and who testified, in the interest of the moving defendants, who are his sisters.   (*Deegan* v. *Deegan*, 22 Nev. 186; *Hunter* v. *Bryant*, 98 Cal. 248, 250; *Garrison* v. *McGowan*, 48 Cal. 592, 599; *Dorsey* v. *Kyle*, 30 Md. 512; 96 Am. Dec. 622, notes, p. 624; *Holmes* v. *Rodgers*, 13 Cal. 191; *Hayes* v. *Shattuck*, 21 Cal. 52; *Ricketson* v. *Compton*, 23 Cal. 637.)

III.   Defendants have not shown sufficient diligence to entitle them to the relief sought.   Even if General Clarke's appearance was unauthorized, they should be and are estopped by their laches and by their acquiescence.   The litigation has been pending more than three and one-half years.   The father and mother of the moving defendants are

also defendants in this action.   During this period a similar suit in the United States Circuit Court, in which the father, mother and brother were defendants, was contested and went to final decree and sale of property.   (*Thompson* v. *Crane*, 73 Fed. 327.)

IV.   It would be difficult to state a case of more chronic laches.   It is doubtful if a case can be found where the relief prayed for has been granted under such long continued neglect and such passive indifference to legal proceedings and, as in this case, after the judgment has been executed and satisfied.   All the decided cases—at least, all that have come to the notice of counsel—hold that defendants should have moved "immediately," "promptly," "without delay," "at the earliest opportunity," after knowledge or information of the alleged unauthorized appearance of counsel, or of the entry of default or judgment resulting from such appearance. Not having so moved, their motion should have been denied. (*Howe* v. *Coldren*, 4 Nev. 174; *Harper* v. *Malloy*, 4 Nev. 447; *Horton* v. *New Pass Co.*, 21 Nev. 187–191; *Hunter* v. *Bryant*, 98 Cal. 250; *Garner* v. *Erlanger*, 86 Cal. 60; *Garrison* v. *McGowan*, 48 Cal. 599, 600; *Dorsey* v. *Kyle*, 30 Md. 622; 96 Am. Dec. 622, notes, p. 624; *Cyphert* v. *McClune*, 22 Pa. St. 195, 197; *Harshey* v. *Blackman*, 20 Iowa, 161; 89 Am. Dec. 521; notes and authorities, p. 534; *Searle* v. *McLaughlin*, 28 Cal. 669, 672; *Jauet* v. *Mortimer*, 29 La. Ann. 206, 212; *Williams* v. *Williams*, 70 N. C. 72; *Bradford* v. *Coit*, 72 N. C. 72; *Sherman* v. *Jorgensen*, 106 Cal. 483, 485; *Youngman* v. *Toner*, 82 Cal. 611; *Haynes* v. *Schwartz*, 5 Wash. 433; *Foster* v. *Hauswith*, 5 Mont. 566; *Griswold Oil Co.* v. *Lee*, 1 S. D. 531; 36 Am. St. Rep. 765; *Lanfear* v. *Mestier*, 18 La. Ann. 497; 89 Am. Dec. 661–2.)

V.   The granting of relief under section 68 of the practice act rests in the sound discretion of the court.   "The discretion intended, however, is not a capricious or arbitrary discretion, but an impartial discretion, guided and controlled in its exercise by fixed legal principles.   It is not a mental discretion to be exercised *ex gratia*, but a legal discretion to be exercised in conformity with the spirit of the law, and in a manner to subserve and not to impede or defeat the ends of substantial justice."   (*Horton* v. *New Pass Co.*, 21 Nev.

187–8; *Bailey* v. *Taaffe*, 29 Cal. 424; *Coleman* v. *Rankin*, 37 Cal. 247; *Williamson* v. *Cummings*, 95 Cal. 652; *Hunter* v. *Elliot*, 27 Ind. 93; *Blake* v. *Stewart*, 29 Ind. 318, 322; *Johnson* v. *Elrod*, 13 Wis. 482; *Seymour* v. *Board of Supervisors*, 40 Wis. 62, 66; *Powell* v. *Weith*, 68 N. C. 343.)

VI.  It was error to open the default and allow defendants to answer without imposing as a condition the payment of costs that had been incurred prior to the date of the order.  It has become the uniform rule to impose terms including all prior costs in such cases in order to compensate the plaintiff for delay and to make it unprofitable for a defendant to willfully neglect to answer or to move promptly. (*Horton* v. *New Pass Co.*, 21 Nev. 188, 194; *Howe* v. *Coldren*, 4 Nev. 174; *Roland* v. *Kregenhagen*, 18 Cal. 455; *Gregory* v. *Haynes*, 21 Cal. 443; *People* v. *O'Connell*, 23 Cal. 281; *Bailey* v. *Taaffe*, 29 Cal. 423, 427; *Howe* v. *Independence Co.*, 29 Cal. 73; *Watson* v. *Railroad Co.*, 41 Cal. 17; *Swift* v. *Canovan*, 47 Cal. 86; *Heerman* v. *Sawyer*, 48 Cal. 562.)

*Wren & Julien,* for Respondents:

I.  Under the section of the statute upon which this motion was based, it is not necessary to allege that an attorney who has appeared without authority is either insolvent, or that there was fraud or collusion or want of good faith.  The old doctrine in reference to unauthorized appearances of attorneys was completely exploded by Chief Justice Kent in the case of *Denton* v. *Noyes*, 6 Johnson, 298; 5 Am. Dec. 237.

II.  We have not had access to the New York statutes, but there is little doubt from the reading of the decision in *Denton* v. *Noyes*, above cited, and the reading of section 68 of our practice act, that this section was originally adopted in New York for the purpose of relieving litigants, where attorneys had appeared for them without authority, from the hardship of the old rule requiring them to show fraud, collusion, etc., and to make it certain by a statutory enactment that the law was substantially as decided in *Denton* v. *Noyes*.

III.  The statute was subsequently adopted in California and also in this state.  The law may therefore be considered settled beyond doubt that a party for whom an attorney has appeared without authority in a case, and who has not been

served with a copy of the complaint and summons, may have a judgment set aside upon application to the court within six months. The section is eminently just. It provides simply that an aggrieved party may apply to the court to be allowed to answer to the merits. In the meantime the judgment is permitted to stand for the protection of the plaintiff. If upon a trial on the merits the plaintiff recover, the judgment stands. If, however, the defendant recovers, the judgment is set aside and a judgment is entered in favor of the defendant. (*Denton* v. *Noyes*, 6 Johnson, 278; *McKinley et al.* v. *Tuttle et al.*, 34 Cal. 235; *Baker* v. *O'Riordan*, 65 Cal. 368; *Hunter* v. *Bryant*, 98 Cal. 247; *Merced Co.* v. *Hicks*, 67 Cal. 108.)

IV. Counsel for plaintiff contends that in all cases there is a legal presumption that an attorney, who appears for litigants, is authorized to do so. This presumption can only be overcome by the strongest, most cogent and convincing proof. That is stating it too strongly, but no doubt the presumption must be overthrown by proof which is satisfactory for that purpose. The testimony of both General Clarke and E. O. Crane is strong, most cogent and convincing. The positive testimony of General Clarke himself is, that he never was employed by either of the defendants, had never had a line of correspondence with either of them, and had never seen either of them.

V. Having denied in their affidavits that they had ever employed General Clarke, or any other attorney, to appear for them, if counsel for plaintiff relied upon showing that some one authorized thereto as their agent did employ General Clarke to appear for them, this counsel for plaintiff utterly failed to do. Agency for a special purpose can only be shown, to use the language of counsel, by the strongest, most cogent and convincing proof, and is not to be inferred from trivial circumstances. (*Yellow Jacket Co.* v. *Stevenson*, 5 Nev. 224; *Ranken* v. *New Eng. M. Co.*, 4 Nev. 78; *Dority* v. *Wells*, 7 Nev. 368.)

By the Court, MASSEY, J.:

This suit was instituted in May, 1894, to set aside certain conveyances of real estate alleged to have been made by E.

Crane to his daughters, Amelia H. Howard and A. G. Stiles, for the purpose of defrauding creditors. The defendants, E. Crane and Mary E. Crane, were duly served with summons and appeared to the action by attorney, and demurred to the complaint, which demurrer was subsequently overruled and time given in which to answer. On the 28th day of January, 1897, R. M. Clarke, who had been employed as the attorney for the respondents, Stiles and Howard, by E. O. Crane, their brother, entered an appearance and waiver of summons in writing for them. It further appears that Mr. Clarke filed a demurrer to the complaint on behalf of the respondents, which was subsequently overruled by the court, and time was given to answer. No answer having been filed in the action, default was duly entered therein against all the defendants on the 18th day of February, 1897, and judgment was duly given in said action against all the defendants on the 20th day of February, 1897.

On the 27th day of March, 1897, the property described in the complaint was sold by the sheriff of Washoe county, pursuant to said judgment and decree. On the day of sale the respondents, Stiles and Howard, served notice upon the sheriff of Washoe county and the appellants, to the effect that they were the owners in fee of certain portions of the land mentioned in the complaint and decree, which was about to be sold thereunder, and that they had never had any notice of any suit pending against them by Stanton, Thompson & Company, and that they had never appeared in any such action, nor authorized any one to appear in their behalf.

On the 10th day of August, 1897, the respondents served a notice of motion to be heard on the 18th day of August, 1897, to set aside and vacate the judgment and decree of the court entered against them by default, and for leave to answer and defend therein, for the reason that no copy of the complaint and summons had ever been served upon said respondents, and for the further reason that they had never employed nor authorized any attorney to appear for them, and had never entered any appearance in said cause, and had no knowledge that said cause was pending in said court until after the judgment and decree had been entered.

The respondents filed their separate affidavits on the 9th day of August, 1897, in support of said motion, in each of which it was alleged that respondents were married women and residents of the State of California; that there had never been any service upon either of the respondents of the summons and copy of the complaint, and that neither had ever employed or authorized any attorney to enter an appearance in said cause, or otherwise, or to act for them in any manner or matter as her attorney in said cause. These affidavits further set up facts which, if true, show a meritorious defense to the action.

On the 18th day of August, 1897, the court, on the hearing of·the motion of respondents upon the affidavits and oral testimony offered, ordered that the judgment be permitted to stand as security for the plaintiffs against any acts of the respondents prejudicial to their rights, pending a trial of the cause upon its merits; and that the respondents, Howard and Stiles, be allowed to answer in said cause to the merits, upon filing a sufficient undertaking conditioned for the payment to the appellants of the costs and damages they might sustain by reason of a trial of said cause in the event the appellants should finally recover judgment against them.

From this order the appeal has been taken.

Testimony was offered on the hearing of the motion relative to the authority of Mr. Clarke to appear for the respondents in said action, which is on some points conflicting. A careful review of such testimony conclusively shows that General Clarke was employed by E. O. Crane, the brother of the respondents, to enter their appearance in said action. We are also of the opinion that the testimony shows that the respondents had never authorized such employment. Considerable testimony was offered with respect to an agreement regarding this action made between counsel for appellants and General Clarke, growing out of an action pending in the United States Circuit Court, wherein the appellants were plaintiffs and E. Crane and others were defendants, involving the same matters, but to which action these respondents were not parties. It is not necessary that this agreement should be considered in determining this case, for the reason that the same was never reduced to writing nor entered of

record on the minutes of the court, as required by the rules and practice of the court.

It is contended on behalf of the appellants that the action of the lower court in this matter is erroneous for the reasons: *First*—That there is no showing on the part of the respondent that General Clarke, who appeared for them, was insolvent, or unable to respond in damages, or that there was any fraud or collusion between appellants and said attorney. *Second*—That the respondents have not shown sufficient diligence to entitle them to the relief obtained. *Third*—That it was error to allow the respondents to answer to the merits without imposing as a condition the payment of the costs that had been incurred prior to the date of the order. Upon the other hand, counsel for the respondents contend that it is not necessary to show that the attorney who has appeared without authority is insolvent, or that there was fraud or collusion between the appellants and the attorney who assumed to appear and act for the respondents.

The action of the lower court in granting the order prayed for is based upon the last clause of section 68 of our civil procedure, which provides * * * that " when from any cause the summons and a copy of the complaint in an action have not been personally served on the defendant, the court may allow, on such terms as may be just, such defendant or his legal representatives, at any time within six months after the rendition of any judgment in such action, to answer to the merits of the original action." (Gen. Stats. sec. 3090.)

It will appear from the reading of said section that there should be a full period after the phrase ending with the words " excusable neglect." Otherwise some doubts might arise as to the proper construction of the entire section. This court has heretofore made the same suggestion in the case of *Howe* v. *Coldren*, 4 Nev. 175.

It will be seen that the leading question to be determined by this appeal is the power of attorneys to bind or conclude those for whom, without authority, they assume to appear and act where no showing is made that such attorneys are unable to respond in damages to their assumed clients. Under the ancient rule of the common law, parties to actions were required to be present and prosecute or defend in per-

son, and special authority was required from, the crown to
enable parties to appear by attorney. This rule was subse-
quently modified by statutes, and the right to appear by
attorney was thereby recognized. In the earlier history of
the practice under these statutes, attorneys were appointed
orally in court; afterwards they were appointed by warrant,
and such warrant was required to be filed. The strictness
of this rule has been gradually relaxed until it is now well
settled that a regular attorney appearing in an action will
be presumed to have authority to so do without warrant.
(*Harshey* v. *Blackmarr*, 20 Iowa, 161.)

It was also the settled rule, under the old practice, that
where an attorney appeared for a defendant in an action
wherein a writ had not been served, without authority, the
judgment against such defendant was held to be regular
unless it appeared there was fraud or collusion between the
plaintiffs and such attorney, or unless the attorney was una-
ble to answer for damages to his assumed client. (*Denton* v.
*Noyes*, 5 Am. Dec. 237.)

The reason of this rule was well grounded. By licensing
attorneys, the courts recommended them to the confidence of
the public, and the opposite party who has concerns with an
attorney in litigation should not be required to look beyond
the attorney to his authority. The mere fact of his appear-
ance was deemed sufficient for the adverse party and the court.

This rule was somewhat modified by the court in *Denton* v.
*Noyes*, *supra*, by allowing the defendant to make a defense to
the suit. Kent, Chief Justice, who rendered the opinion,
gives the reason for such modification in observing that, " if
there had been any collusion between plaintiff and attorney
for the defendant, it would have altered the case, but there is
none shown or pretended, and my whole opinion proceeds
on the ground that the plaintiffs have acted in good faith. I
am disposed, therefore, to prevent all possible injury to the
defendant and, at the same time, save the plaintiff from
harm. This can be done only by preserving the lien which
the plaintiffs have acquired by their judgment, and by giv-
ing the defendant an opportunity to plead, if he has any
plea to make, to the merits." It will thus be seen that
*Denton* v. *Noyes* adopts the old rule with the modification, as

above stated, and in subsequent cases involving a like question, this rule has been followed upon the principle of *stare decisis*, yet has been frequently pronounced as harsh. (*Meacham* v. *Dudley*, 6 Wend. 514; *Williams* v. *Van Valkenberg*, 16 Howard Pr. 144; *Allen* v. *Stone*, 10 Barb. 547; *Campbell* v. *Bristol*, 19 Wend. 101.)

An examination of the authorities in other states will show that the harshness of the rule as laid down in *Denton* v. *Noyes*, *supra*, has been so modified that it is now the practice to relieve parties from judgments rendered against them in consequence of the acts of unauthorized attorneys without regard to the ability of the attorney to respond to his assumed client for damages. (See *Harshey* v. *Blackmarr*, *supra*, and authorities therein cited; *Handley* v. *Jackson et al.*, 50 Pac. Rep. (Or.) 915.)

We regard the reasoning and authorities in the case of *Harshey* v. *Blackmarr*, *supra*, as conclusive upon this point. Judge Dillon, who rendered the opinion in *Harshey* v. *Blackmarr*, very cleverly demonstrates the harshness and injustice of the old rule, and, in commenting upon that, says: "It obliges a person to be bound by the unauthorized act of a mere stranger. It binds him by a judgment of a court without a day in court. It relieves the other party of a duty which in reason belongs to him, viz., to serve his process and to see at his peril that his adversary is in court. And it carries out this unsoundness by compelling the wrong party to look to the attorney. True, reason and logic would say if an attorney appeared for me without my knowledge or authority, express or implied, I should not be bound by the act if never ratified or promptly disavowed, and if the adverse party, being ignorant of the want of authority, and carelessly omitting to serve process, or to require the attorney to show his authority, has been damaged, he, and not myself, should be the one to look to the attorney."

In the case of *Handley* v. *Jackson et al.*, *supra*, Wolverton, Justice, speaking to the same point, uses the following language: "The inexorable logic of this great jurist has had its effect, so that there is now no longer any doubt but that the enforcement of a judgment, obtained and resting upon the unauthorized appearance of an attorney, may be restrained

in equity irrespective of the question whether the attorney is responsible or irresponsible, or acted by procurement or collusion with his antagonist."

It is clearly apparent from the record, that General Clarke acted in good faith in assuming that the brother of respondents had authority to employ him to appear for. them. It is equally clear that the respondents had never authorized such employment and appearance. It is equally clear that there was no collusion or fraud between the appellants and General Clarke. It is also clear that the respondents had shown a good defense to the merits. It would therefore be unjust to the respondents to base their right to relief under these circumstances upon the ability of the attorney to answer to them for damages; for some doubt may be expressed under the facts, as to whether the attorney was liable for such damages.

We must also hold that under the last clause of section 68 of our practice act, above cited, the clause upon which the action of the court in this case is manifestly based, the respondents were not guilty of laches in this proceeding, as that clause confers upon the respondent the right at any time within six months after the rendition of the judgment, to answer to the merits of the action, where *from any cause* the summons and copy of the complaint have not been personally served upon them. This proceeding was commenced within the time limited by that clause.

Neither can the appellants complain of the failure of the court to order the payment of incurred costs as a condition to the right of respondents to answer. The cases cited in support of this contention arise under a preceding clause of the same section of the practice act, where default has been entered upon service of process. The order of the court is based upon just terms, for it permits the judgment to stand, thereby preserving the lien of the judgment, and requires the respondents to give a sufficient undertaking conditioned for the payment of the costs and damages which the appellants might sustain by reason of a trial of said cause in the event they should finally recover judgment.

For these reasons the order of the lower court is hereby affirmed.