JOHN CARTER BROWN, Appellant, *v.* ASHER P. NICHOLS, Administrator, &c., of ALBERT D. PATCHIN, deceased, impleaded with others, Respondent.

A judgment recovered against a defendant who was not served with process and had no knowledge of the suit, but for whom an attorney appeared without authority, cannot be attacked for want of jurisdiction in any collateral proceeding, and is binding upon such defendant. (GROVER, J., *contra.*)

*It seems,* that defendant may seek relief from such unauthorized appearance by direct application in the action. (EARL, Ch. J. and INGALLS, J.)

The lien upon equitable assets, acquired by commencement of an action in the nature of a creditor's bill, is not extinguished by the death of defendant before the appointment of a receiver, but survives against such assets in the hands of the administrator. (INGALLS and SMITH, JJ., *contra.*)

(Argued January 7th, 1870 ; decided March 21st, 1870.)

APPEAL from a judgment of the General Term of the Supreme Court, for the eighth district, reversing a judgment entered upon the report of Hon. JOSEPH G. MASTEN, sole

referee.   The facts, material on the points made on this appeal, are as follows :

The plaintiff recovered a judgment on the 9th November, 1861, against Aaron D. Patchin, in an action commenced September 7th, 1861, to foreclose a mortgage given to him by Patchin.   The mortgaged premises were sold, by virtue of this judgment, December 5th, 1861, and a judgment for deficiency, being the sum of $10,887.02, was docketed December 12th, 1861.   Execution issued to collect such deficiency was returned *nulla bona*.   The summons in said action was never served upon Patchin, and he never knew the action was commenced or that judgment was recovered.

Solomon G. Haven, a responsible attorney-at-law, appeared for the defendant, Albert D. Patchin, in said action, without his authority or knowledge.   Plaintiff's attorney having made inquiries of some members of defendant's family, for the purpose of serving summons upon him, was informed by them that defendant was then at Clifton Springs, sick, and they did not want him annoyed by service of process upon him, and that Mr. Haven would appear for him.   Plaintiff's attorney informed Mr. Haven of these facts, and requested him to appear, but he declined, on the ground that he had no directions to do so; but, at a subsequent interview, Mr. Haven stated to plaintiff's attorney that he had authority, and did thereupon sign and hand to him the notice of appearance in that action.   Mr. Haven died December 24th, 1861. This action was commenced December 9th, 1862, and Aaron D. Patchin was made a party defendant herein, and served with summons December 10th, 1862.   By proceedings commenced December 22d, 1862, Aaron D. Patchin was adjudged to be a lunatic, and to have been a lunatic from the 1st day of June, 1862.   Commission issued to his committee January 24th, 1863, who, as such committee, was made a party defendant April 27th, 1863, having already been appointed guardian of Patchin in this action.

Aaron D. Patchin died July 27th, 1864, intestate, and letters of administration of his goods, &c., were duly issued

to Asher P. Nichols. This action was revived against Asher P. Nichols, as administrator, June 22d, 1865, by order of the Supreme Court.

At the commencement of this action the said intestate owned eight second mortgage bonds of the Buffalo, New York and Erie Railroad Company, which bonds came to the hands of the defendant Nichols, as such administrator, and, with the interest collected by him thereon, now remain in his hands.

The appointment of a receiver was prayed for in the complaint herein, but no receiver has been otherwise applied for, and none has been appointed in this action.

The referee decided, as matter of law:

That the judgment recovered by plaintiff against defendant's intestate, was valid and binding.

That plaintiff, by the commencement of this action, obtained a lien upon the said eight bonds in the hands of defendant, the administrator.

That such lien has not been divested, and the said bonds and money are in his hands, subject to such lien.

That judgment must be entered in favor of plaintiff, against such defendant, as administrator, as aforesaid, establishing the plaintiff's lien upon said bonds and interest money in his hands, and directing that the same be applied toward the payment of said judgment docketed in the foreclosure suit, and that a receiver be appointed.

The defendant excepted to such decisions severally.

Defendant also requested the referee to decide that the appearance of Mr. Haven, as attorney in the foreclosure suit, was, under the facts found, void; that the judgment for the deficiency could not, under the facts found, be enforced in equity against the assets in defendant's hands; that the right of the plaintiff to reach the assets of Aaron D. Patchin by this action ceased at his death; and that said assets did not come to defendant's hands subject to any lien by plaintiff's action, but must be distributed according to the provi-

sions of the statute, in due course of administration, without regard to any such claims against him.

These requests were made separately, and the referee refused to so decide as to each of them, and defendant excepted to such refusals severally.

Judgment was entered upon the report of the referee, in favor of the plaintiff. Upon appeal by said defendant to the General Term, this judgment was reversed and a new trial ordered. The plaintiff gave the usual stipulation and appealed to this court.

*Albert P. Laning*, for the appellant, on the question as to the validity of the judgment docketed in the foreclosure action, cited *Osborn* v. *Bank* (9 Wheat., 738, 830, 831); *Henck* v. *Todhunter* (7 Harr. & John., 275); *Allen* v. *Green* (1 Baily, 448); *Arnold* v. *Mayor* (5 Scott, N. S., 741); *Shelton* v. *Tiffin* (6 Howard, U. S., 163); *Prince* v. *Griffin* (16 Iowa, 552); *Lagerd* v. *Patterson* (1 Blackford, Ind., 427); *Hill* v. *Ross* (3 Dall., 331); *Herner* v. *Doe* (1 Ind., 130); *Masterton* v. *Le Clear* (4 Minn., 163); *Hare & Wallace's Notes to Mills* v. *Duryee* (2 Am. Leading Cases); *Denton* v. *Noyes* (6 John. R., 296); *Am. Ins. Co.* v. *Oakley* (9 Paige, 496); *Jackson Ex. Dem.* v. *Stewart* (6 John. R., 34); *Republic of Mexico* v. *De Arangoiz* (5 Duer., 643); *Hamilton* v. *Wright* (37 N. Y., 502); *St. Albans* v. *Bush* (4 Vt., 58); *Bates* v. *Voorhees* (20 N. Y., 528.)

That the lien acquired by the commencement of this action, was not discharged by the death of the defendant, he cited *Utica Ins. Co.* v. *Powers* (3 Paige, 365); *Savage* v. *Best* (3 How., U. S., 111); *Watcher* v. *Bancroft* (15 Abb. R., 243); Code, § 121; 2 R. S., 191, §§ 107, 109; *Allen* v. *Walter* (10 Abb. R., 382); *Penniman* v. *Norton* (1 Barb. Ch. R., 246); *Storm* v. *Waddell* (2 Sand. Ch. R., 494, 510); *Clark* v. *Rist* (3 McLean R., 494).

*Asher P. Nichols*, respondent in person (*John Ganson* with him), insisted that the judgment for deficiency was void,

and cited *Shelton* v. *Tiffin & Perry* (6 How. U. S., 163, 186); *Osborne* v. *U. S. Bank* (9 Wheat., 741, 752); *Kerr* v. *Kerr* (2 Hand, 272); *Bayley* v. *Buckland* (1 Wels., Hurls. & Gord., 1); *Robson* v *Eaton* (1 T. R., 62); *Allen* v. *Stone* (10 Barb., 547, 550); *Bellinger* v. *Ford* (21 Barb., 311); 14 Am. Law Reg., 385; *Meacham* v. *Dudley* (6 Wend., 515); *Grazebrooke* v. *McCredie* (9 Wend., 437); Const. of State of New York, art. 1, § 6.

That the lien ceased at Mr. Patchin's death, no receiver having been appointed, and cited *Sylvester* v. *Reed* (3 Edw. Ch. R., 296); *Mathews* v. *Neilson* (id., 346); 2 R. S., 87, § 28; *Jones* v. *Smith* (1 Walker's Ch., R., 115, Michigan); Willard on Ex., 289, 274; *Anslie* v. *Radcliff* (7 Paige, 439.)

EARL, Ch. J. 1. Aside from the effect the Revised Statutes may have upon the subject, it will not be questioned that the lien the judgment creditor gets by virtue of the commencement of his equitable suit would survive the death of the debtor. (*Storm* v. *Waddell*, 2 Sand. Chan., 494.) The property then passes to the personal representatives charged with this lien. The assets are subject to this lien, and the debts of the debtor are to be paid out of them after this lien, like any other legal lien, has been first satisfied. It seems to me that the provisions of the Revised Statutes (2 R. S., 88, § 27), as to the order in which debts of a deceased debtor are to be paid, have nothing whatever to do with this question. This provision does not define what are assets, nor how liens upon the assets are to be discharged, but it directs the order in which the net assets, that is, the property of the debtor remaining after liens have been discharged, shall be applied in payment of his debts.

2. I think the judgment, upon which this action is based, is a valid one. Mr. Haven, a responsible attorney appeared for A. D. Patchin, the deceased, and in such a case, I think it ought to be regarded as the settled law of this State, that the judgment may stand, and the party must seek his remedy against the attorney, who without any authority has

appeared for him, unless there is some good reason for not doing it. I think a party should always seek relief for an unauthorized appearance in the suit in which it has been put in, where the rights and equities of all parties can be best protected. This rule is based not entirely upon the law of agency, but upon reasons of policy and justice which are discussed in the case of *Denton* v. *Noyes* (6 John., 296), and by Judge WOODRUFF, in *Hamilton* v. *Wright* (37 N. Y., 502).

I think the judgment of the General Term should be reversed, and that the costs of both parties upon the appeal to the General Term and to this court, should be paid out of the funds in the hands of the defendant.

INGALLS, J. (dissenting.) Two questions of importance are raised for consideration upon this appeal. 1st. Whether the judgment in the foreclosure action was void as to the defendant, Aaron D. Patchin, because he was not served with process and had no knowledge of the existence of the action, but was represented by an attorney who was not employed by him, or by his authority. 2d. Whether the plaintiff, by the commencement of the present action, which is in the nature of a creditor's bill, to collect the judgment for deficiency upon the sale of the premises in the foreclosure action, acquired such a lien upon the mortgage bonds in question, which survived the death of Patchin, and entitled the plaintiff to have the proceeds of the bonds applied to the payment of his debt, in preference to the claim of the other judgment creditors of Patchin, whose judgments were recovered prior to that of the plaintiff, to have the same applied by Nichols, the administrator, in the due course of administration, in payment of debts according to their priority, as prescribed by the statute regulating such payments. In regard to the first question, it is found by the referee that Mr. Haven appeared as the attorney of Mr. Patchin, in the foreclosure action, at the instance of some member of Mr. Patchin's family, to prevent his being disturbed by the service of process, as he was then sick, and

from home, staying at Clifton Springs for the benefit of his health. That said Haven was a responsible attorney, and acted in good faith in what he did. All the circumstances attending such appearance show clearly that there was an entire absence of fraud or collusion. In my judgment the law upon this question is too firmly settled in this State by repeated decisions of this and other courts, to justify us in hesitating in regard to the binding effect of such appearance by Mr. Haven as the attorney for Patchin in the foreclosure action. In the following cases this question is discussed and decided, both in regard to causes where there was, as well as where there was not, service of process upon the party for whom the attorney appeared without authority from such party; and they fully sustain such appearance. (*Hamilton* v. *Wright*, 37 N. Y., 502; *American Ins. Co.* v. *Oakley*, 9 Paige, 496; *Denton* v. *Noyes*, 6 John. Rep., 296; *Jackson* v. *Stewart*, id., 34; *Republic of Mexico* v. *De Arangoiz*, 5 Duer., 643.) In some instances where an attorney has assumed to appear for a party without authority, the courts, upon *direct application*, have granted relief such as was consistent with the rights of all parties interested. (*Elsworth* v. *Campbell*, 31 Barb., 135; *Blodget* v. *Conklin*, 9 Howard, 442; *Denton* v. *Noyes*, 6 John. Rep., 296.) I think the law, as settled in this State, rests upon principle as well as authority. The attorney is an officer of the court, acting under oath, and liable to be disgraced and punished for such gross violation of duty, as to fraudulently appear in an action without authority; and I apprehend the instances are rare indeed when it has occurred. Again, a contrary rule would, it seems to me, be impracticable, as the title to real property depends to a great extent upon the records of the courts; it would be a great hardship to compel parties in tracing titles acquired through such records, in every instance where a judgment has been entered, to inquire into the particular authority which an attorney had to appear in such actions. Indeed, the effect of such a rule would be to create positive distrust as to the soundness and regularity of such titles. I

think the objections, on the grounds of hardship and danger, urged against upholding such appearance by an attorney rest more in theory than practice. If a party will omit to apply to the court for relief against an unauthorized appearance of an attorney, he should not be allowed to attack proceedings collaterally upon such ground. The law in this State, upon this subject, is settled upon a sound basis, having due regard to the rights of all parties who may be interested, and, in my judgment, should not be disturbed.

With the other question, in regard to the effect of the lien claimed by the plaintiff upon the bonds in question, I have much greater difficulty. Mr. Patchin, the judgment debtor, died before the appointment of a receiver in this action, and his assets passed to the defendant, Nichols, as his administrator, who has the possession thereof, including the bonds in question. The statute, which controls his administration in regard to the payment of the debts of the intestate, provides as follows (2 R. S., p. 89, § 27, Edm. ed.): "§ 27. Every executor and administrator shall proceed with diligence to pay the debts of the deceased, and shall pay the same according to the following order of classes. 1. Debts entitled to a preference under the laws of the United States. 2. Taxes assessed upon the estate of the deceased, previous to his death. 3. Judgments docketed and decrees enrolled against the deceased according to the priority thereof respectively. 4. All recognizances, bonds, sealed instruments, notes, bills, unliquidated demands and accounts." Mr. Nichols, as such administrator, holds the bonds in question for the purpose of applying the avails thereof to the payment of the debts of the intestate, in accordance with the direction of the above statute. Creditors, other than the plaintiff, insist that the fund in question be applied upon their judgments, which were recovered prior to that under which the plaintiff claims. The defendant insists that, by the death of Patchin before any receiver was appointed in this action, all his choses in action and equitable interests devolved upon and vested in his personal representatives, and that no preference has

been acquired by the plaintiff, in consequence of the commencement of this action, over other creditors of Mr. Patchin, and that the plaintiff must abide the result of a due course of administration, in regard to the payment of his claim. This proposition is sustained by two decisions. (*Sylvester* v. *Reed*, 3 Edwards Ch. R., 296; *Mathews* v. *Neilson, Administrator, &c.*, id., 346.) The case first referred to was affirmed by the chancellor upon appeal. These cases are directly in point; and, if they are to be regarded as sound expositions of the law upon this question, they are decisive of the case at bar. I have failed to find any decision which expressly overrules them, or which establishes a different doctrine. The case of *Storm* v. *Waddell* (2 Sanford Ch. Rep., 494) has been referred to, in which the doctrine, in regard to equitable liens, is very elaborately discussed; but that case does not undertake to overrule the cases cited from 3 Edwards Ch. R. Where a creditor, in the lifetime of his debtor, procures the appointment of a receiver in an equity action, or where a creditor attaches the choses in action or equitable interests of a debtor, he acquires a legal right to the possession of such property, which the law recognizes and protects, and the administrator cannot deprive the creditor of such possession and right, without satisfying the debt. It is well settled that, as to property *which is subject to levy and sale on execution*, the mere commencement of an equity action, without the appointment of a receiver, will not prevent the seizure and sale of such property under an execution issued upon a judgment recovered subsequent to that, to collect which, the equity action is prosecuted. (*Van Alstyne* v. *Cook*, 25 N. Y., 489; *Storm* v. *Waddell*, 2 Sanford Ch. R., 494; *Lanning* v. *Easton*, 7 Paige Ch. Rep., 365.) Is not the reason for the rule this; that where the possession of the property is acquired by legal right, as by levy on execution, a mere equitable lien, which is created by the commencement of an equity action, will not be allowed to prevail over the legal right. Now apply that principle to the case at bar. The statute to which we have referred vests

in the administrator the legal right to the possession of the property in question, and that statute directs him in regard to the manner it shall be applied in payment of debts. It would seem to follow that the mere equitable lien acquired by the plaintiff must yield to the superior legal right acquired by the administrator under the statute, for the benefit of the creditors of the intestate. When the remedy at law is complete, equity does not interfere. Through administration upon the estate of the intestate, every judgment creditor shares in the distribution, according to priority; which is just. During the lifetime of the debtor, it requires the intervention of a court of equity to reach his choses in action and equitable interests; but when he dies, the law substitutes a legal remedy, viz., administration. If the view thus taken is correct, it follows that the plaintiff must seek payment of his judgment in the due course of administration upon the estate of Mr. Patchin. Whether the equity action could be revived for any purpose, it is unnecessary to inquire. The judgment of the General Term should be affirmed, and final judgment ordered for the defendant, with costs of the General Term and of this court.

Grover, J. (dissenting.) The questions arising upon the exceptions taken to the legal conclusions of the referee are: 1. Whether a judgment rendered against a party not served with process, and who had no notice or knowledge of the action, but for whom an attorney, licensed to practice in the court, appeared, without any authority from the party so to do, and the party having no knowledge of such appearance, is valid as against such party, the other party having acted in good faith, upon the belief that such appearance was authorized, in the recovery of the judgment. 2. Whether a lien acquired upon equitable assets by the commencement of a creditor's suit to collect a judgment, out of such assets, after the return of an execution unsatisfied, becomes extinct upon the death of the defendant, before the appointment of a receiver in the action, or possession of such assets acquired by any proceed

ing therein. The counsel for the appellant insists that it is conclusively settled by authority in this State, that such judgment is legal and valid against the party, and as such binding in all respects, save only his right to apply to the court, by motion, to set it aside, which motion will be granted only when the attorney who has appeared without authority is insolvent and unable to respond for the damages, or other equitable reasons therefor are established. An examination of the cases will show that this question has never been determined by the court of last resort, although somewhat discussed, and in the opinions in two cases the law is stated as claimed by the counsel; but the cases will, I think, show that the point was not determined by the court. In *Acker* v. *Ledyard* (4 Seld., 62), the question was, whether the sheriff was discharged by payment of the money into court which he had collected upon an execution and a claim made by a landlord for rent against the execution debtor, under the provisions of the statute then in force, such payment having been made pursuant to an order of the court out of which the execution issued. It appeared that upon the hearing of the motion upon which the order was made, an attorney appeared for the landlord. In discussing the question the learned judge cites cases from the Supreme Court, holding that the unauthorized appearance of an attorney renders the proceedings valid against the party for whom he appears; but, without stating whether he concurs therein, adds, that it is not necessary to place the case upon this ground, for the authority of the attorney did not seem to have been disputed upon the trial of the cause. It thus appears that the question was not in any way involved in the case, and all that was said in relation to it was *obiter*. In *Bates* v. *Voorhies* (20 N. Y., 525), the defendant's attorney died intermediate the trial, which was before a referee, and the entry of judgment upon the report. After the death of the attorney a firm of attorneys served notice of appearance for the defendant without authority from him. The attorney for the plaintiff afterward served notice of the judgment upon

this firm, and the question was, whether this service was good for the purpose of limiting the time of the defendant for bringing an appeal from the judgment. It clearly was if the defendant was bound by the unauthorized appearance of the attorney. But the court held the defendant's right of appealing not affected by this unauthorized appearance; in effect, holding it a nullity. Although the learned judge, in his opinion, cites *Denton* v. *Noyes,* and speaks of it as a decision of very high authority, and does not profess to overrule it, yet it strikes me that the conclusion arrived at, which was concurred in by the court, can hardly be reconciled with that case. The question arose, not upon a motion to set aside the appearance, but upon an appeal from an order dismissing the appeal from the judgment, on the ground, that it was not brought in the time required after notice of the judgment. This order was properly granted if the party was bound by the unauthorized appearance. If such appearance was not binding, as held by the court for this purpose, I am at a loss to see why it should be held effectual to bind him by a judgment. Upon a motion to set aside the appearance, the question would be different. If set aside, it would no longer be in the case for any purpose. But the point adjudged was that the appearance remaining in the case, being unauthorized was of no effect in limiting the right of appeal. *Hamilton and others* v. *Wright,* (37 N. Y., 502), is relied upon by the counsel for the appellant as an adjudication by this court sustaining the validity of the judgment. The point in that case was, whether grantors of land, held at the time adversely, were liable to the defendant for the costs of an ejectment brought by their grantee for the recovery of the land against the party holding adversely, without their knowledge, in their names, the attorney having been employed by the grantee without any authority from them other than what was to be implied from the grant by them. It was held that they were liable. Had this been placed upon the ground that their appearance by attorney in the action rendered the judgment valid as to them, the position of the counsel would be correct,

as the point is directly involved in the case. From the opinion of WOODRUFF, J., it appears that he considered that the appearance of the attorney, although unauthorized, rendered the judgment valid, and that this was the ground of his judgment, although from the report it appears that he assented to the correctness of the principle upon which MASON, J., placed his judgment. That was that the grantors, by their conveyance, gave authority to the grantee to commence an action in their names against the party holding the lands adversely for the recovery of possession, and to employ an attorney for that purpose. HUNT, Ch. J., concurred in this view. The report does not show the view upon which any of the other judges placed their vote. It fails to show that any other judge concurred with WOODRUFF, J. Although silent as to any dissent, where two distinct grounds, having no connection with each other, are assigned for the judgment, upon either of which it may be sustained, this silence does not warrant the conclusion that the court concurred in both. It follows that this case does not authoritatively determine the question. The point was elaborately discussed and determined by a divided court, in *Denton* v. *Noyes* (6 Johns., 296), holding the judgment valid. The court in this case endeavor to obviate the injustice that may manifestly arise from the rule, by permitting the defendant to come in and defend the action upon terms. An examination of the authorities upon which the court held the judgment valid, will show that this was an innovation upon the practice adopted in those cases; that was to turn the party over to an action against the attorney for redress of the injury. This, when the attorney was solvent, would afford a partial remedy; but in case the attorney died before a recovery therein, at common law the right of action was gone, and the party in that event would be wholly remediless. The relief given in *Denton* v. *Noyes* is only partial. In case the defendant had no defence, he was charged with the costs of the action without any redress. The court were governed in their determination by the English cases cited. The authority of these

cases was much impaired, if not entirely overthrown, by the subsequent determination of the King's Bench, in *Robson* v. *Eaton* (1 Term, 62). In that case it was held that, where an attorney had brought an action under a forged power of attorney and collected a debt, the defendant was not thereby discharged, but that another action could be maintained against him for its recovery. The learned judge says he is persuaded that it was not designed, in the latter case, to overrule the former ones. On what he based this inference I am unable to discover. Surely it was not intended to hold that plaintiffs are not bound by the unauthorized appearance of attorneys, equally with defendants. Again, the learned judge says that in *Robson* v. *Eaton* it was inevitable that one of the parties must suffer in the first instance, and be left to his remedy over; and the court left the hardship to fall upon the immediate victim of the fraud, who, perhaps, if he had examined and duly questioned the warrant of attorney, might have traced and detected the forgery; and adds that he could not perceive that the case had much bearing on the present question. With deference, I would remark that it was an adjudication upon the precise point. That point was whether the plaintiff was bound by the unauthorized act of the attorney in bringing the suit and collecting the money, and the court held that he was not. It is true that no equitable relief could be given to either party; while in the case then under consideration the court could and did give such relief by giving to the defendant an opportunity to defend upon terms. The question, whether a party is bound by the unauthorized appearance of an attorney, must be determined as one of law, and cannot be left in the discretion of the court to hold him bound when equitable or other relief can be given, but not bound when it cannot. This case of *Denton* v. *Noyes* has been since followed, and considered controlling in the Supreme Court, but in several instances accompanied by expressions of strong disapprobation by the ablest judges. (See *Meacham* v. *Dudley,* 6 Wend., 515; *Grazebrooke* v. *McCredie,* 9 Wend., 437; *Allen* v. *Stone,* 10 Barb., 547). The rule is in conflict with

that adopted in regard to judgments rendered in other States and given in evidence here under the provisions of the federal constitution and act of congress. In regard to these, it is provided that the same faith shall be given to the judgment here as in the State where rendered. In regard to such judgments, it has been held by this court that the appearance of an attorney without authority does not confer jurisdiction, and that the judgment, if not otherwise sustained, is void. (*Kerr* v. *Kerr*, 2 Hand, 242 [41 N. Y.]) It will be observed that the question is one whether, at common law, such judgments are valid. In the absence of proof to the contrary, the presumption is that the common law prevails in the other States of the Union. How then can it be held that, by the same law, jurisdiction is conferred upon the courts of this State by the unauthorized appearance of an attorney, while it is not upon the courts of other States? It is claimed that the *American Ins. Co.* v. *Oakley* (9 Paige, 496) is an authority sustaining the rule adopted by the majority of the court in *Denton* v. *Noyes.* An examination of this case shows that the chancellor held that the solicitor was authorized to appear. Hence the discussion and determination of the effect of an unauthorized appearance was not necessary in the case. This precise question arose in *Shelton* v. *Tiffin* (6 Howard, 163), in the Supreme Court of the United States, and it was held by that court that an unauthorized appearance by an attorney did not confer jurisdiction upon the court, and that the judgment was, as to such party, void. It must be borne in mind that, in this and the other cases in which the question has arisen, this appearance was the only source of jurisdiction. That the party was never served with process. Had the latter fact occurred, jurisdiction would have been thereby acquired. I shall not discuss the cases that have arisen in other States. These are somewhat conflicting, and furnish no surer grounds than those above cited. Were this a question affecting to any extent titles to property or the business transactions of men, erroneous as I consider the rule adopted in *Denton* v. *Noyes,* I should regard it the duty of the court to adhere to it, and

leave to the law-making power the duty of substituting a wiser one in its place. But it is not such a question. Upon principle there can be but little doubt. The proposition that, by the admission by the court to practice as an attorney, power is conferred upon the attorney to confer jurisdiction upon the court as to all mankind, by his appearance, without any authority whatever therefor, is a proposition so entirely at variance with reason and all the analogies of the law as scarcely to be capable of discussion. It is rightly said that jurisdiction may be acquired of the person either by service of process or the voluntary appearance of the party, and that a party may legally appear in person or by attorney. From this it is argued that the appearance of the attorney is legal. as to the court and opposite party. · But this is begging the whole question. The admission of an attorney confers upon him no more right to appear for another in court, without being authorized, than it does to act as his agent in any other matter. True, no one can appear in court as the attorney of another without having been admitted as attorney by the court; but, having been so admitted, he has no power to appear for another, unless authorized so to do, any more than to act as his agent in matters where no license from the court 'is required. His appearance, under such circumstances, is not the appearance or act of the party in any sense, but his own act, for the consequences of which he alone is responsible, the same as any other agent assuming to act for another without authority in any other matter. But it is insisted that the rule in *Denton* v. *Noyes* is required by public policy; that, without it, neither the court nor opposite party could rely, with entire safety, upon the validity of the appearance of an attorney. This is true; but the question comes to this, so far as policy is concerned, whether it is better to require the opposite party to inquire into the power of an attorney when there is any possible doubt in regard to it, before any injury has arisen from his act, in case he does not possess it, or to hold a party bound by a judgment in an action of which he has had no knowledge and by the result of which

he may be ruined. It is no answer to say that the court will relieve upon motion where the injury is great and cannot otherwise be remedied. The party has no absolute legal right to any such redress. Once hold the judgment valid, and all the remedy left is an appeal to the discretion of the court, which the rule itself would require to be equitably exercised, not only in view of the effect upon the rights of the party applying, but upon those of the opposite party and others who had acquired rights under the judgment. This is the essential difference between a right based upon the law and one resting in the discretion of the court, which may be granted or denied as the court deems proper. Again, it is said that the case will be one of rare occurrence. This is true; but this affords but small consolation to a party ruined by a judgment in an action of which he has known nothing. It matters but little to him whether many or few are involved in like manner. My conclusion is, that no jurisdiction is acquired by the unauthorized appearance and that the judgment is void. That, in the present case, it is the plaintiff who must look to the attorney for redress. That the finding that Patchin had no defence is wholly immaterial. If he was bound by the unauthorized appearance, he is by the judgment, whether he had a defence to the action or not; and if not bound by the appearance, he is not by the judgment. My conclusion is, that Patchin was not bound by the appearance of the attorney, and consequently not by the judgment. This disposes of the case and renders an examination of the question whether the lien upon the equitable assets of Patchin was extinguished by his death unnecessary. I have examined this question however, and arrived at the conclusion that the lien was not thereby discharged; that *Worthington* v. *Pierson* (3 Edwards Ch., 297) and *Mathews* v. *Neilson* (id., 346), holding the contrary, were wrongly decided by the vice-chancellor. The only reason assigned for the decisions in those cases was the statute prescribing the order for the payment of the debts by the personal representatives. I can see no good reason for giving such an effect to this statute. It provides a rule for admin

istering the property of the deceased, and not that of others. That the lien acquired by the plaintiff by the commencement of the suit was good against Patchin, and all claiming under him by title subsequent, as to this property, during his life, is conceded. There is no reason for holding that upon his death his administrators took the property discharged of the lien. Such a rule would subvert the well established rule that a prior equity will prevail against a subsequent legal title as to all except *bona fide* purchasers. The order appealed from should be affirmed, and final judgment for the defendant given upon the stipulation, on the ground that the judgment is void for want of jurisdiction in the court by which it was rendered.

EARL, Ch. J., LOTT, SUTHERLAND, HUNT and FOSTER, JJ., for reversal.

SMITH, J., for affirmance on the grounds stated in INGALL's opinion.

FOSTER and SMITH would concur with GROVER as to the validity of the judgment, if a new question, but thought the law settled otherwise.

Judgment reversed, with costs to both parties payable out of the fund.

NOTE.—It will be seen that, in the case of *Kerr* v. *Kerr*, cited by respondent and referred to in the opinion of GROVER, J. (reported in 2 Hand, 272), there was no proof that the persons describing themselves as attorneys, who appeared and answered in the action, were in fact such. The judgment in that case was a judgment of divorce, rendered by a Circuit Court of the State of Indiana; and the court decided that such a judgment may be impeached collaterally, by proof that the court did not acquire jurisdiction. REP.