ANONYMOUS, Trustee, etc., Respondent, *v.* FREDERICK GELPCKE and others, Appellants.

*Assignment for benefit of creditors — right of trustee to compromise claims — effect of order of court approving such compromise — notice to parties interested — Trustees must act together.*

A trustee, under an assignment made for the benefit of creditors, without notice to the creditors or to his co-trustee, who he knew was opposed to the compromise of a claim, applied to the court, by a petition purporting to be made on behalf of himself and his co-trustee, for instruction to make such compromise, and obtained an order directing it. *Held*, on application for the passing of his accounts, that such order was no protection for the compromise made thereunder by such trustee. That when controverted rights or doubtful acts are to be determined, notice should always be given to the parties interested.

Under an assignment made for the benefit of creditors, the trustee is authorized to compromise claims when it is for the best interest of the parties in interest that it should be done, though such power is not specifically given by the instrument of assignment; and in such case an order of the court approving such compromise, is simply evidence of good faith and care on the part of the trustee in the execution of his trust.

As a general rule trustees cannot act separately, but must all join in any sale, lease, or other disposition of the trust property.

APPEAL from an interlocutory order, confirming a referee's report and directing judgment in favor of the plaintiff, in an action brought for the settlement of his accounts as trustee, under a general assignment made for the benefit of creditors.

*B. Roelker*, for the appellants. A receiver, as an officer of the court, has a right to apply to the court for instructions in relation to the funds, when the question is as to what may be his duty under its orders. (*Curtiss* v. *Leavitt*, 1 Abb. Pr., 274; see Edwards on Receivers, 158; *Ireland* v. *Eade*, 7 Beav., 55; S. C., 13 L. J. [N. S.], [Ch.], 129; 8 How. [U. S.], 495; 2 Hill, 159.) No court or officer can acquire jurisdiction by the mere assertion of it, or by falsely alleging the evidence of facts on which jurisdiction depends. (Judge BRONSON in *The People* v. *Cassels*, 5 Hill, 165.) Courts have only the power and the duty to enforce a trust, if valid, and not to alter or defeat it. (*Nicholson* v. *Leavitt*, 6 N. Y., 520; overruling the case of *Rogers* v. *De Forest*, 7 Paige, 272; *Pitcher* v. *Carter*, 4 Sandf. Ch., 16; *Fitzgerald* v. *Topping*, 48 N. Y., 444; *Jesup* v. *Hulse*, 21 id., 171, SELDEN, J.; 1 R. S., 680 [730], pt. 2, chap. 1, art. 2, tit. 2; *In the Matter of Van Schoonhoven*, 5 Paige, 560.) The seventy-first section merely authorizes the court to appoint a new trustee in the place of one who is removed by the court, or whose resignation is accepted after he has once assumed the trust. (*Hawley* v. *Ross*, 7 Paige, 107.) "Section 71. The chancellor shall have full power to appoint a new trustee in place of a trustee resigned or renounced, and when, in consequence of such resignation or removal, there shall be no acting trustee, the court, in its discretion, may appoint new trustees, or cause the trust to be executed by one of its officers." (*King* v. *Donnelly*, 5 Paige, 47.) "This act (4 Edm. Stat., 484, as amended, 7 id., 194, 654) requires no new right or remedy, but it is designed

to regulate an existing right merely." (*Juliand* v. *Rathbone*, 39 N. Y., 372.) An assignee under a voluntary assignment for the benefit of creditors, is chargeable with the care and diligence of a provident owner, and liable for a loss occasioned by ordinary negligence. (*Litchfield* v. *White*, 7 N. Y., 438.) Trustees of a creditor's deed, or under an assignment, have no power to compromise debts respecting the estate without an express authority, which must be either contained in the deed or conferred upon them at a meeting of the creditors. (Hill on Trustees, 344, and note 2; *Nicholson* v. *Leavitt*, 6 N. Y., 519.) There is also a difference between "*compromising*" and "compounding." (See Burrill's Law Dictionary; *Dow* v. *Platner*, 16 N. Y., 562; *Wiles* v. *Gresham*, 2 Drewry, 258; 5 De Gex, MacNaughton & Gordon, 770.) Advice of counsel will not protect a trustee in making a wrong payment, or doing any thing that is not in accordance with his duty as trustee. (*Doyle* v. *Blake*, 2 Sch. & Lef., 243; *Peers* v. *Ceely*, 15 Beav., 209; *Hoch* v. *Walker*, 3 M. & C., 705; *Boulton* v. *Beard*, 3 De G., M. & G., 603; *Re Knight's Trusts*, 27 Beav., 49; *In re Alexander*, 13 Irish Ch.) And where trustees compounded with a bankrupt debtor to the trust estate, they were held liable to make good the full amount of the debt, where it was not shown that the bankrupt would have obtained his certificate, or that the debt might not have been recovered in full. (See *Wiles* v. *Gresham*, 5 De Gex, MacNaughton & Gordon; affirming S. C., 2 Drewry's Ch., 258.) "The power of trustees over the subject-matter of the trust is equal and undivided. They cannot, like executors, act separately; all must join both in receipts and conveyances." (HARRIS, J., in *Ridgley* v. *Johnson*, 11 Barb., 535; Hill on Tr., 305, 306; *Brinckerhoff* v. *Wemple*, 1 Wend., 470, 474; *Wiles* v. *Gresham*, 2 Drewry, 285; 5 De Gex, M. & G., 770; *Fisher* v. *Cuthell*, 5 East, 491.) In a voluntary assignment for the benefit of creditors, partial payment of a debt by the assignee does not take the case out of the statute of limitations; the assignee is not the agent of the assignor more than an assignee in bankruptcy. (*Picket* v. *Leonard*, 34 N. Y., 175; *Roosevelt* v. *Mark*, 6 Johns. Ch., 292; *Ex parte Rigby* 19 Ves., 463; *Thatcher* v. *Candee*, 3 Keyes, 157.) Trustees must all unite in bringing an action on behalf of the estate, though one has assigned his interest to the other

trustees. Herzfeld, upon leaving for Europe, appointed an attorney by letters of attorney, by which he empowered the attorney to do all those acts which the law allows him to do by attorney. This power to do so is shown by the cases before cited. (8 Cow., 573, 574; *Sinclair* v. *Jackson; Mumford* v. *Murray*, 6 Johns. Ch., 1 and 452; Tiff. & Bull. on Trustees, 760, 761.) If the court had no jurisdiction, it had no power to make a record, and the supposed record is not in truth a record. If not a record, it cannot import absolute verity. (*Kilbourne* v. *Woodward*, 5 Johns., 37; *Fenton* v. *Gulick, Trustee*, 8 id., 194; *Buckle* v. *Eckhart*, 3 Denio, 281.) The order of the court of 18th June, 1869, is void, because the creditors, the *cestuis que trust*, were not made parties either actually or constructively. (1 Daniell's Ch. Pr. [4th ed.], 220, 222; Barb. on Parties in Equity, 439; Story Eq. Pl., § 207; Mit. Eq. Pl., 175; *Adams* v. *St. Leger*, 1 Ball & Beatty, 182; *Horspool* v. *Davis*, 6 Bosw., 581; *Christie* v. *Herrick*, 1 Barb. Ch., 260; *Grune* v. *Lisson*, 2 Curtis C. C., 177; Story Eq. Pl., §§ 81, 83; Id., § 236.) Objection to want of parties may be taken at the hearing. When an application to the court is not of course, nor such as can be made *ex parte*, written notice of such application must be served on opposite party. (Barb. Ch. Pr., 568; *Corning* v. *Baxter*, 6 Paige, 178.) In case there is any person who has a right to be heard in opposition to a petition, a copy of it must be served upon him, with notice of time and place of presenting the same. This service must be in the same manner and the same length of time before presenting the petition as a notice of motion is required to be served. (Barb. Ch. Pr., 580; Daniell's Ch. Pr. [II.], 1587.)

*A. J. Vanderpoel*, for the respondents. The legal presumption always is, that a trustee has faithfully executed his trust, unless the contrary is fully and satisfactorily evinced. (Burrill on Assignments [2d ed.], 559; *McCubbin* v. *Cromwell*, 7 Gill & Johns., 157.) As to the general jurisdiction of the court to direct and instruct the trustees who were its officers. (2 R. S., 730, § 71; 3 R. S. [5th ed.], 22.) Chancery will assist and protect trustees in the performance of the trusts committed to them whenever they seek the aid and direction of the court as to the establishment, manage-

ment or execution of them. (*Trotter* v. *Blocker*, 6 Porter, 269; *In Matter Croton Ins. Co.*, 3 Barb. Ch., 642; *The Matter of the Receiver of the Globe Ins. Co.*, 6 Paige, 102, 103.) Jurisdiction to grant the relief sought being thus shown to exist, the question of notice to the parties in interest is not a jurisdictional one, but one addressed to the discretion of the court, relating only to the orderly and methodical conduct of the proceeding in which the aid or sanction of the court is invoked. (*Millbank* v. *Crane* [ALLEN, J.], 25 How. Pr., 193.) An irregularity in doing an act which the court has authority to do does not render the act void; and though in a direct proceeding it may be set aside, it cannot be questioned collaterally. (*Millbank* v. *Crane*, 25 How. Pr., 193, 195; *People* v. *Norton*, 9 N. Y., 178, 179.) There can be no question of jurisdiction, and it is a *quasi* jurisdiction *in rem*, a power over the trust, and is not acquired by the service of process upon the *cestui que trust*, or other persons interested in the trust fund, or in its preservation. (Per ALLEN, J., 25 How., 195; *Miller* v. *Beverleys*, 4 Hen. & Mun., 415, 422.) The order authorizing the settlement having been granted by the court having jurisdiction, it cannot be attacked in any collateral proceeding. (*Fisher* v. *Hepburn*, 48 N. Y., 41; *The Chemung Canal Bank* v. *Judson*, 8 id., 254, 262, 263.) There is no doubt of the perfect honesty of the settlement, and on the principle on which a court of equity acts in cases of this character, plaintiff cannot be made liable for any loss, even if the order of the court had not authorized the settlement. (*Thomson* v. *Brown*, 4 Johns., 619, 629; *Pierson* v. *Thomson*, 1 Edw. Ch., 224, 225.)

DANIELS, J.:

A general assignment was made, on the 11th of June, 1861, by the firm of Gelpcke, Keutgen & Reichelt, to William Vogel, of all their property, for the benefit of their creditors. The assignee proved unable, for some reason, to give the security required by the provisions of the statute prescribing what it should be, and on an application made for that purpose, the court appointed the plaintiff and the defendant Joseph Herzfeld trustees to execute the trusts created by the assignment. Among the assets assigned, and which passed into the hands of the trustees under their appoint-

ment, was a large demand existing against the city of Dubuque, in the State of Iowa. This consisted of bonds and two judgments, amounting, in 1869, to about $278,000. It was claimed by the city authorities that it was unable to pay the debt, and a compromise was proposed at the rate of twenty-five cents on the dollar. The plaintiff, in the name of himself and the other trustee, but without his authority or concurrence, on the 15th of June, 1869, presented a petition to this court at chambers, which, after setting forth the facts relied upon, applied for an order allowing and authorizing them to make such compromise and settlement of the said claims against the said city of Dubuque, upon the payment of twenty-five per cent of the said indebtedness, with interest until the same should be paid. The application was referred to a referee to hear and determine the matters set forth and referred to in the petition, and to make his report upon the same to the court. After a hearing before him, he reported that the plaintiff and Joseph Herzfeld, as trustees and assignees of the firm of Gelpcke, Keutgen & Reichelt, be authorized and directed to compromise all claims, and all securities held by them as such trustees, as aforesaid, against the said municipal corporation of the city of Dubuque, in the State of Iowa, at twenty-five per cent of the principal and interest of the said claims and securities, with interest upon the same, and assign said claims of indebtedness to H. L. Stout and L. D. Randall. This report was confirmed by the court, and an order was made that the said plaintiff " and Joseph Herzfeld, assignees and trustees for the benefit of the creditors of Gelpcke, Keutgen & Reichelt, be and they are hereby authorized and directed to settle all the claims held by them against the city of Dubuque, in the State of Iowa, whether in the form of bonds, judgments or otherwise, at the rate of twenty-five per cent of the amount thereof, and to assign and transfer the said claims to H. L. Stout and L. D. Randall." The residue of the order related to the distribution to be made of the proceeds, and is not important in the disposition of this case. The prayer of the petition, the order of reference, the referee's report, and the order made upon it by the court, have been set forth at large, in order to show what was applied for, and what the court probably designed to provide for by the order which was finally made.

Upon the hearing of this cause, it appeared that this proceeding was instituted, carried on and completed by the plaintiff, without notice to either of the creditors, or to the other trustee or his attorney who was empowered by him to act for him during his absence from the country. The compromise and settlement was effected by the plaintiff in the same way without notice to, or the assent of the other trustee or either of the creditors. And it appeared that the other trustee had expressed his disapproval of such terms of settlement to the plaintiff, before the proceedings were commenced to obtain for them the sanction of the court. The defendants, appealing, objected to the allowance of that part of the plaintiff's account which was dependent upon the validity of the settlement, claiming it to have been made without authority, and that the order allowing it was void because of the want of notice of the application for it to the creditors. By the report which the referee made on the final hearing of the case before him, it appears that these objections were disregarded, and these defendants excepted to it for these and other reasons. The court at Special Term, however, overruled the exceptions, confirmed the report, and ordered judgment, conformably to its terms, in the plaintiff's favor, and from the order and direction then made the defendants referred to appealed. No objection whatever has been taken to the hearing of the appeal in this condition of the case, and none need be suggested by the court in its determination. But the points presented for decision may, under these circumstances, be properly considered on their merits.

It has been the common practice for courts of equity to advise and direct trustees as to the discharge of their duties, when that may be so much involved in doubt as to render it necessary; and, when the order may not have the effect of determining controverted rights, notice of the application for it does not seem to have been, and probably would not be, indispensable to its validity. For, in that class of cases, it is at most permissive and advisory, adding or refusing the sanction of the court to the judgment, or convictions of the trustees as to what may be judicious under the circumstances presented for consideration. It is simply evidence of their care and good faith in doing what may be deemed best in the execution of the trusts. That was the nature of the course pursued in *Curtis* v. *Leavitt* (1 Abb., 274); and *Matter of Croton Ins. Co.* (3 Barb. Ch.

Rep., 642.) But where controverted rights or doubtful acts are to be determined, that practice would be altogether improper. For it would oppose the fundamental principle which protects parties against the consequences of judicial proceedings of which they may have had no notice. To render them controlling and obligatory in that class of cases, not only notice, but an opportunity to oppose the application to be made, are both matters of vital necessity. (*Stone* v. *Miller*, 62 Barb., 431; *People* v. *Soper*, 3 Seld., 428–431.) Consequently, important rights are never judicially determined without securing to the parties to be affected, such a hearing as may afford them complete and ample protection against an erroneous or improper adjudication. And trustees have been required to observe this principle in the applications which they have found it necessary to make for their guidance in doubtful cases. In the case of *Christ's Church in Londonderry* the petition was presented on notice. (5 N. H., 424.) In *Wheeler* v. *Perry* (18 id., 307), the proceeding was by bill. *Dimmock* v. *Bixby* (20 Pick., 368), was the same. (See also *Freeman* v. *Cook*, 6 Iredell Eq., 373; Burrill on Assignments [2d ed.], 557; 2 Perry on Trusts [2d ed.], §§ 476 *a*, 928.) So far as the practice has been indicated it has usually been by bill of complaint, and where the less formal course by petition has been taken, it has been accompanied with notice to the parties interested in opposing it. And that is required by the principle which protects all parties against condemnation, or prejudice to any of their rights, without the opportunity of first being heard. No good reason exists why trustees should be exempted from its control, but, on the contrary, that good faith and caution which have always been required from them, should certainly subject them to its control.

If the order which was made for the compromising and assignment of the debts which the trustees held against the city of Dubuque, was intended as an adjudication of their right to dispose of them when that was either not created at all or was doubtful under the assignment, then notice of the application for it ought to have been given to the creditors; and the omission of notice would render it entirely inoperative as to them. For that reason they could assail and controvert it collaterally, as they have endeavored to do in this case, and it would constitute no justification or

excuse whatever for the disposition made of the debts by the trustees. But although the terms used in the order would appear to countenance that construction, it probably should not be so regarded; for, while the assignment did not expressly create the power to compound or compromise bad debts, it did confer a very general authority for the collection of such as should prove collectible, without in any way declaring what might be done with those that were only partially collectible. The object of it, however, was clearly to turn all the assignors' debts into money for the payment of what was owing to their creditors. And that, with the general power of collection, would logically appear to be sufficient to justify a compromise of such as it might turn out could not be collected in full. It was a necessary act for turning the estate into cash, and must, therefore, have been contemplated by the assignment. The result to be attained could be accomplished in only one other way, and that was by means of a sale, which was not specifically provided for the disposition of bad debts. Either, possibly, might be adopted, but that of a compromise was the most consistent with the general power given to collect the debts, and the end and purpose of the assignment could be best promoted by making it.

A passage in Hill upon Trustees (page 344) has been relied upon as authority against the existence of the power of assignees to compromise debts incapable of collection. But, strictly, it does not warrant that understanding, for it is followed by the statement that if they enter into a compromise without the authority of the creditors, they will be held responsible to them if it should be found to be an improper arrangement. This sufficiently qualifies the preceding language used by the author, to show that the power does exist in case it shall be properly exercised. And that is the clear effect of the case of *Shepherd* v. *Towgood* (1 Turner & Russell [12 Eng. Ch.], 379), upon which the statement of the principle was made by this author. The compromise in that case was of a creditor's action questioning the conduct of the trustee, and the suit was held, under the circumstances, to be sufficiently supported to require an inquiry into his conduct, and that was accordingly directed. (1 Turner & Russell [12 Eng. Ch.], 390.) The power to compromise, in a proper case, was not denied, but it was considered to have been improperly made use of in that instance.

The case of *Blue* v. *Marshall* (3 P. Wms., 381) is a more direct authority in favor of the existence of that power. There the trustee had relinquished a debt, considered uncollectible, in order to induce the voluntary surrender of the possession of a piece of land, and even an inquiry into the propriety of his conduct was denied by the court. In *Fanshaw* v. *Higginson* (8 De Gex, M. & G., 827), the payment of a doubtful claim for a legacy was sustained, and the principle was in terms declared, that where trustees do only what appears to be prudent in such cases, they are not to be charged. (8 De Gex, M. & G., 834.) And clearly they should not be, for, under such circumstances, no injury can result to the trust estate by their acts. An emergency is then presented requiring the exercise of judgment, and where what is done is the best that can be for the interests of the trust estate, no reason exists for charging them. (*Wiles* v. *Gresham*, 5 De Gex, M. & G., 770; *Jevon* v. *Bush*, 1 Vernon, 342.)

They had the authority, although not expressly given them in the assignment, to compromise or compound such debts as could not be wholly collected, provided they acted in good faith, and did that which was best for the the creditors under the circumstances. The order made, therefore, conferred no power upon them beyond what they had without it, and it should be, as it very well may be, construed as only sanctioning what the petition stated to be the convictions of the trustees concerning the advisability of a compromise. The petition simply applied for an order allowing and authorizing the settlement, and that is all that the court probably designed to do when it was directed to be entered. It did not control the action of the trustees, but added the judgment of the court to what was stated to be their own as to its propriety.

It has been objected that it was not valid even for that purpose, because one of the trustees was not in reality a party to the application for it. But he was named as a party in the petition for the order, and represented by counsel in the proceedings which were taken, and that is sufficient to deprive the objection of the effect it was relied upon as entitled to. (*Brown* v. *Nichols*, 42 N. Y., 26.) But neither the authority which the trustees had under their appointment and the assignment, nor the sanction given to it

by the order that was made, empowered one of them, without the concurrence of the other, to make the compromise. Their authority was joint, and not several, in its nature. (Tiff. & Bull. on Trusts, etc., 539.) As a general rule trustees cannot act separately, "but they must all join in any sale, lease, or other disposition of the trust property." (Hill on Trustees [3d Am. ed.], 305; Perry on Trusts [2d ed.], § 411; *Sinclair* v. *Jackson*, 8 Cow., 543.) In that case it was held, by the chancellor, that trustees have "no separate interests of their own on which the separate deeds can operate; they conjointly represent the interest of the *cestui que trust*, and, unless authorized to act separately by the instrument creating the trust, they can make no disposition of the trust estate vested in them, otherwise than by their joint deed. (Id., 584; *Thatcher* v. *Candee*, 33 How. Pr., 145, decided by the Court of Appeals, also sustains the same position.)

And the order made by the Special Term, approving and assenting to the compromise relied upon, proceeded upon this principle, for it in terms only authorized the plaintiff and Joseph Herzfeld, the trustees, together to settle the claims held by them against the city of Dubuque. It did not sanction the act of one without the other, but permitted both to act in making the adjustment. In this respect it in no manner interfered with or restrained the power they had under the assignment. But, with the approbation of the court, the use of it was permitted in making the compromise it was proposed to complete. They were not bound to make it, and accordingly could, at any time before it was made, refuse it, on becoming satisfied that better terms could be secured. The observance of the duty requiring the concurrence of both trustees was important in this case, particularly as one of them was satisfied that the proposed compromise was improvident. And he was probably right in his convictions, for the debts were unquestionably valid, as they existed against a municipal corporation of near 40,000 inhabitants, owing but about $1,500,000. Indeed, there is not the least probability that the assent of the court could have been obtained for the settlement at all, if the fact had been truly stated in the petition for the order, that one of the trustees was opposed to it. Instead of that, he was represented in it to have approved of the terms offered, and as joining in the application

made by the petition for the order. That was a fraud upon the court, which, in any view that might be taken of the nature of the proceeding, would justly deprive the plaintiff who committed it of all possible protection from the order itself. (*State of Michigan* v. *Phœnix Bk.*, 33 N. Y., 9; *Dobson* v. *Pearce*, 2 Kern., 156; *Warner* v. *Blakeman*, 4 Keyes, 487.) But even if he could, by conforming to its direction, have been protected by means of it, he could not in the way he agreed upon and made the compromise. For, instead of acting with the other trustee, he alone accepted the terms of settlement offered, formally surrendered the evidences of the debt and completed the compromise, as far as he could possibly do so by his own individual action, and against the known refusal of his companion to assent to it. It is true that the other trustee was not in the country, but he had left an attorney here, in terms empowered to act for him, which was known to the plaintiff, who never even consulted him upon this subject. But if he had not done that, the absence of the other trustee would not have empowered the plaintiff to act in hostility to his wishes, as he did, in making the agreement for the compromise and afterward performing it. It is impossible, under the salutary doctrine of courts of equity, to concede good faith to such conduct on the part of a trustee. Certainly his acts were wholly without authority. And that was enough to render him liable to the creditors for the injury the trust estate had sustained by means of them. It was urged that they could not question the regularity or validity of his proceedings, and *The People* v. *Norton* (5 Seld., 176), was relied upon as authority for that proposition. But that case decided nothing of that kind. It merely held that the surety of a trustee who had obtained possession of a trust estate by what may have been an irregular proceeding, could not shield himself from liability on his bond by means of the irregularity. No such principle is involved in the present case, for the creditors appealing have done nothing whatever, rendering it inequitable or improper for them to rely upon the unlawful acts of the plaintiff, as the foundation of a claim that he shall indemnify them against the loss he has imposed upon the estate by their performance. He deprived them of what seems to have been valuable assets held in trust for their benefit, and, as his acts in doing that were unauthorized, they

have the right to insist that he shall sustain the loss it may have produced.

The order appealed from should be reversed, the accounting set aside, and a new accounting should be directed, so far as the present appellants are concerned, with costs to abide the event.

Davis, P. J., and Brady, J., concurred.

Ordered accordingly.