JEFFERSON JACKSON, Individually and as Administrator, etc., et al., Appellants and Respondents, *v.* BENJAMIN ANDREWS, Individually and as Administrator, etc., et al., Appellants and Respondents.

(Argued March 4, 1885; decided April 14, 1885.)

THIS action was brought to have a trust declared in certain real estate conveyed by Stephen C. Jackson, plaintiffs' intestate, to defendant John Andrews, by trust deed.

The opinion here is mostly taken up with the discussion of questions of fact.

One of the lots of land in question, known as the "brickhouse" property, was conveyed by Jackson to Eliza Andrews, now deceased, also by John Andrews. The former conveyance, plaintiff claimed, was obtained by fraud, and the latter to have been wholly without consideration. After the death of Eliza Andrews her heirs at law commenced an action of ejectment against Jackson and others to recover possession of said lot. The complaint therein set forth both conveyances. The answer therein alleged that the trust deed was fraudulently made by general words to cover said lot, contrary to the understanding of the parties and without the knowledge of Jackson, and that the conveyance by the trustee was wholly without consideration. The jury found that the lot was honestly included in the trust deed, and that the conveyance by the trustee was not without consideration. Judgment was rendered simply awarding possession to plaintiffs and damages for withholding it. This judgment was set up as a bar to the present action, so far as it relates to said lot.

The court here say :

" When it is said that the judgment thereupon rendered concluded merely the question of legal title and right of possession under the trust, and is perfectly consistent with the remedy now sought, we are required to examine that judgment and determine its effect.   Several other persons besides Jackson were parties defendant, and, of course, in possession. Jackson's defense turned wholly on the question whether, in truth, the land was embraced in the trust deed.   Upon that issue the jury ruled against him, and found specially as we have stated, but the judgment entered determined only that the plaintiffs had a title under which they had immediate right of possession.   The complaint does not allege an absolute ownership.   It contents itself with a bare averment of legal title and right of possession resulting from certain conveyances; and the judgment determines nothing but a right of possession in the plaintiffs, flowing from those consequences, and carefully avoids any assertion of absolute ownership.   The special findings as to the deeds to and from the trustee indicate that the sole controversy was whether the ' brick-house ' property was covered by the trust deed and so passed to the trustee, and whether his conveyance to Eliza was supported by a consideration; for if any different claim might have been founded upon Jackson's deed to Eliza, it must have been disregarded or withheld from the controversy to make the other questions material in the slightest degree, or explain the need of submitting the specific inquiries answered by the jury.   The judgment, therefore, did not, by its terms or within its reasonable construction, negative a transfer of legal title and possession for the purposes of an outstanding and living trust, but is consistent with its existence.   It is said, however, that Jackson might have set up his equitable rights, and omitting to do so, the title of Eliza, founded upon a consideration, was absolute.   But Jackson had no equitable rights which would defend an ejectment, for as the trust created by himself had not terminated and was only just begun, and nothing had yet occurred to indicate a denial or repudiation by the trustee, or to demonstrate infidelity or meditated treachery, there was no

ground of equitable defense to defeat the transfer of possession. And as to absolute title in Eliza, it is enough to say that, for the purposes of this action, Eliza was Benjamin and John was Benjamin; one was his left hand and the other his right hand, and he but shifted the property from one hand to the other. As the result of the ejectment suit, the property remained in the hands of Benjamin, Thomas, George and Mrs. Buckley, all of whom, as we have seen, were parties to, and agents in, the common conspiracy, the execution of which, in its details, utilized for that ulterior purpose the judgment in ejectment. We may let it stand; we may concede their legal title; but they were trustees when they took it, and could not take it otherwise, and no judgment has decreed that they did. What might be the effect of this judgment, standing alone and unaffected by such explanations and surroundings as here exist, it is not necessary to discuss; but in the light of the evidence presented we think its operative force went no further than to vest a legal title and right of possession in Eliza, derived from the deed of trust, but leaving her, by her relation to Benjamin and her 'full knowledge,' which the jury did not deny, in the position of a trustee in an existing and living trust."

Other questions presented are set forth and disposed of in the opinion as follows:

" The plaintiff complains on his appeal of that part of the determination which charges Andrews with the rents actually received, and refuses to make him liable for the full rental value. The scope of the action assumes the contract relation of trustee and beneficiary, and seeks to establish it. While the defendants denied it, and sought to make their holding absolute, neither theory implied a wrongful entry or a trespasser's possession. The judgment affirmed the plaintiffs' contention, and gave relief in accordance with it. Andrews thus became chargeable with the rents received as trustee. He was in no sense a wrong-doer in his possession of the property. There is no evidence that he neglected to procure tenants as far as possible, or failed to obtain all the income which the property would yield, or that he did not manage the leasing to the best

of his ability. Indeed, his very claim of absolute interest in the property would indicate an effort to obtain all possible income. Treating him as trustee, his proper and prudent performance of the trust in that respect is challenged by no evidence. The complaint does not assail him as a trespasser or wrong-doer from whom damages are to be recovered, but as a contract trustee, who should account as such. To the suggestion that Benjamin's possession, although lawful in the beginning as that of a trustee, became unlawful after two years, and after title was fraudulently vested in the confederates, we answer that such possession has not even yet become unlawful; that under the whole scope and frame of the decree, the defendants were not required to convey back and restore possession, except upon a reimbursement of all sums actually and in good faith expended; that until the commencement of this action no such offer appears to have been made, and no demand of a reconveyance at any earlier date was proved; that the possession of the confederates is held to be that of the trustee under the trust and for the benefit of the plaintiffs, and the latter cannot at the same time treat them as trustees to compel a reconveyance, and then ignore that character to punish them as wrong-doers. The two positions are inconsistent, and cannot stand together. We think the conclusion of the General Term upon this branch of the case was correct.

"There remains to consider the quarrel of the defendants with that part of the judgment which gave to the plaintiffs the option, within two years after the final close of the litigation, to elect to take the outstanding tax titles, certificates and leases upon paying therefor the sum shown by the referee's report to have been their cost to Andrews, or to decline to take them, and leave him in their full possession and ownership. The learned counsel for the defendants strenuously insists that there is no foundation in the case for any such option; that the decree should have compelled Jackson to take these titles, and reimburse their cost; that consistently with the position of a trustee forced upon Andrews by the plaintiffs' action, he should be treated as such in all respects, and reimbursed for all outlays made in good faith and for the benefit of the estate. To the

doctrine thus asserted, we give our assent, while not convinced that it applies to the case in hand effectively for the result sought. If, indeed, these purchases and the outlay they involved were made by the trustee, acting in good faith and with a view to the benefit of the estate, we should go with the learned counsel to the result at which he aims. It is just at that point that the courts below differed with him, and that we also differ. We put no stress upon the plaintiffs' contention that, under the explicit language of the trust deed, Andrews was only authorized to pay taxes, and cancel and discharge tax liens, and had no authority as trustee to buy and take assignments of certificates of sale and leases, because in at least one of the mortgages given at the origin of the trust his right to do so was expressly stipulated; and when the trust deed was given, Jackson himself swears that he was asked to make John the grantee, because if Benjamin was named he could not buy outstanding titles and keep them alive for the protection of the estate. But there was an inherent difference between tax payments and cancellations on the one hand, and purchases by Benjamin and his confederates on the other, as it respected the question of good faith. The former were necessarily for the benefit of the estate in the sense that they could not well be for the personal benefit of the trustee, and any interested motive to pay and discharge them could not readily be conceived. Good faith as to them was an easy and natural inference, and so justified a prompt allowance of their amounts to the credit of the trustee. But the purchases were of a different character. They might or might not be for the benefit of the estate. They were capable of being used to cast a cloud upon the title, to embarrass any effort to sell, to discourage a struggle for relief, and to reduce the value of the property to its owner; and so the question of good faith necessarily arose. The trustee could have no motive to pay an invalid tax. He might do so through mistake or inadvertence, but could gain nothing by willfully doing it, and would simply peril a reimbursement; but if seeking to wrest the property from its true owner, to so cover it with incumbrances and liens and entangle it with transfers as to make its restoration diffi-

cult and furnish opportunity to acquire it, the temptation to purchase and keep alive even doubtful or invalid liens would exist, for they would help to embarrass the owner, and deter friendly assistance. Were then these purchases made in good faith, and with a sole view to the benefit of the estate? Were they, as the learned counsel for the defendants asserts, always bought and held with perfect loyalty to the trust? We agree with the courts below in thinking they were not. In view of the general scheme and plan to which we have adverted, of which the devious maze of transfers, liens and sales bear clear evidence; in view of the denial. of plaintiffs' rights, and the persistent effort to subvert them, we feel bound to say that the good faith of these purchases, with a mere intent to benefit the estate, is so extremely doubtful, so little proved or established that the court was justified in not compelling the plaintiff to take them without investigation while reserving his right to do so, and in giving him an option, after reasonable opportunity and inquiry, to take them or refuse."

*Edward M. Shepard* for plaintiffs.

*Joshua M. Van Cott* for defendants.

FINCH, J., reads for modification of judgment and for affirmance as modified.

All concur.

Judgment accordingly.