Peckham, J.
There have been many controversies between Jackson and those claiming some title or interest adverse to him in the premises in Brooklyn, part of which are involved in this appeal. Particular phases of these controversies have been within a few years before this court and decided by us. Jackson v. Andrews, 98 N. Y., 672 ; Jackson v. Suydam, 109 id., 661; 16 N. Y. State Rep., 993.
It is agreed on all sides that one Minne Suydam was the owner of the premises in question at the time he gave a mortgage thereon which ultimately came into' the hands of Stephen C. Jackson as owner. The mortgage not being paid, an action was brought in the city court of Brooklyn to foreclose the same, and a judgment of foreclosure was rendered therein on May 11, 1852. The judgment appointed a referee to sell the premises and named the Merchants’ Exchange in Rew York as the place where they were to be sold.
In July, 1867, the judgment of foreclosure not yet having been executed, an order upon plaintiff’s application in that action was made by the city court of Brooklyn, appointing another referee, in place of the former one who had died in the meantime, to execute and,carry into effect the judgment and such judgment was modified by providing that the sale should take place in the city of Brooklyn, as the statute required.
The counsel for the defendant Rionda in this action takes objection to that order on the ground, as-he alleged in his motion for a non-suit, that it was ineffectual to foreclose the rights of Suydam or any other party in interest, having been made without notice.
The only defendant who appeared in the foreclosure action was the defendant Suydam, and he appeared by his attorneys living in Rew York. When the order was offered in evidence in this action, the objection was made that no notice was given “ except the service of the affidavits and order to show cause on the attorneys who appeared for Minne Suydam in the action fifteen years before and whose authority had ceased with the entry of the final judgment in 1852, and on the further ground that it modified ex parte the judgment and materially affected the defendant's right without any notice to him.” The order recites the service of the papers on the attorneys for Suydam, and defendant’s objection admits that such service had been made. The point which the defendant raises is that the papers should have been served on Suydam personally and that service on his attorneys -was not sufficient The attorneys admitted due and timely service of a copy of the papers. We think facts enough existed in this case to give the court jurisdiction to make the order. It might have required a personal service on Suydam, but under all the facts we think it was a question within its discretion. There was no fact shown which proved a repudiation of. the authority of the attor *269 neys for Suydarn to admit due service of the papers, even if it were correct to say that all their authority as his attorneys had expired with the entry of judgment, which we do not at all agree to. As they had admitted such service, such admission would be, I think, at least prima facie evidence of an authority from Suydarn to make it. Brown v. Nichols, 42 N. Y., 26.
The second ground of objection taken to the introduction of the order, that it modified ex parte the judgment, is answered by what has already been said, and by the further fact that it was not a material modification of the decree, and hence did not affect injuriously the rights of any one.
We think the court also had jurisdiction to make the orders of the 24th of February, 1886, one of which substituted Wing as plaintiff in place of Stephen 0. Jackson, then deceased, and the other vacated the order made in 1875, by which Mr. Wing, the father of the present plaintiff, had been relieved from his bid made in 1869 at the sale under the decree in foreclosure above mentioned, and directed Wing to-go on and complete his bid, and provided for the referee giving him a deed of the premises.
The facts upon which the defendant bases his objection to the validity of the orders in question are somewhat complicated. They are not fully set forth in the findings of fact in the case, and some of them the court expressly refused to find. I shall not attempt to state them here in detail, but shall content myself with setting forth the reasons for coming to the conclusion that the defendant cannot maintain a defense resting upon the alleged invalidity of these orders.
He correctly states that the plaintiff must recover on the strength of his own title, and if the plaintiff do not show that he is entitled to the possession of the premises in question, it is of no moment that the defendant shows no better title than he. The defendant is in possession, and may remain so' until some one comes with such a valid title to the premises that he has a right to evict the defendant. I also agree that the decision of the court in the original action of foreclosure, upon the motion made by Eionda, the present defendant, to set aside, the two above mentioned orders granted therein, is neither res adjudícala nor otherwise controlling as a decision of this court in affirmance of the general term of the city court refusing to set such orders aside. If Blanco were in possession solely under the tax leases at the time of his death, and if after that event his representatives had so continued, such possession would have been under a title paramount to the mortgage, if the leases had been valid, and hence neither Blanco nor those claiming under him after his death would have been proper parties to that action of foreclosure, and, therefore, not entitled to notice of any proceedings therein. Whether or not the leases were valid would not be tried in the foreclosure suit.
The court may also have refused to set aside the orders in that suit because it may have come to the conclusion that Eionda did not in any way connect himself with the rights of Blanco or his representatives, and however much ground the latter might have *270 to ask the court to set the orders aside, it would not interfere in that action upon the request of one who to all appearances was a stranger to their rights, not in any way entitled to represent them or to claim that the orders were erroneous because they had had no notice.
In this case the attitude of the parties is different, and the defend- • ant Rionda makes out a good defense by showing that the orders in question were void because Blanco or his representatives had no notice (if such notice were necessary), even if he should not in any way connect himself with the interest which they held in the property If those orders were void all further proceedings in the foreclosure suit would fall, and the plaintiff would make out no title to the premises. A careful consideration of the case, however, satisfies us that the defendant upon the facts found did not show that the orders were void, or that Blanco or his representatives had a right to notice of the application for them to the court.
By virtue of the agreement of Laman B. Wing in 1869, with . Stephen C. Jackson, and the assignment of the bond and mortgage and decree in the foreclosure suit to him, Wing was constituted the attorney in fact of Jackson, and with the very broad and discretionary powers which were given Wing by these instruments was coupled a large interest in the subject assigned, so that Wing had power to take any step he should feel or decide to be proper for the purpose of carrying out the intent and object of his agreement with Jackson, and no prior notice was necessary to be given to Jackson in order to bind him by Wing’s actions. But if any notice were necessary it was given so far as to bind those claiming directly under Jackson (who had died), excluding in such statement the rights of Blanco and his representatives, of which I shall now speak. If they were not entitled to any noticie, it is clear that no one else not notified was entitled to it.
It is alleged that Wing made the bid upon the premises in 1869 in part execution of the object of his agreement with Jackson and the more effectually to carry it out, but that when he did not cony out such bid by taking a deed of the premises from the referee Jackson became entitled after the lapse of a reasonable time to revoke his power of attorney and to resort to some other means by which to protect his interests. To that end it is alleged that he in 1872,- and about March 11, entered into a contract which is contained in the letter of that date written by him to Blanco, and that under and by virtue of that contract Blanco entered upon the premises, paid taxes thereon, put up houses and died in possession thereof. By this means the defendant claims that Blanco had succeeded to the rights of Jackson as the equitable, if not the legal owner of the decree in foreclosure, and that no step could be taken in that action, at least by anyone who had notice of Blanco’s rights, without his knowledge and consent Assuming that Blanco entered into possession in this way, yet the particular and specific rights in the decree which he would have obtained by such entiy are not so, clear as they might be. But the very first step in the way of arriving at these lights is to show *271 that the letter was a contract accepted and assented to by Blanco, and that under and in pursuance of its provisions he entered into possession of the premises, expended moneys thereon, and thus became the equitable owner of the decree, or at any rate interested therein and entitled to noticé of all future proceedings in the foreclosure suit which might affect his rights.
No such facts are found by the trial court The evidence is not such that their existence is a necessary or legal inference from any facts which have been found. The court expressly refused to find that there was any agreement made between Jackson and Blanco upon the subject contained in the letter of March, 1872, from Jackson to him, and refused to find that Blanco had entered under it or had expended any moneys by reason of it, or had bought any tax leases on account of that letter or agreement.
The refusal to find any of these facts was not an error of law, for the inferences to be drawn from the uncontradicted facts do not necessarily lead to their establishment. The court did find that Jackson wrote the letter of March 11, 1872. In it, and at the end, Jackson says: “ And now, Mr. Blanco, if you think well of this, my proposition, and I hope it will be so, please answer me this letter, signifying your assent, and by so doing much oblige,” etc. There is no evidence of any assent thus given. But the defendant claims that other facts show such assent. It does appear that shortly after March, 1872, Blanco took tax leases of such premises for 1,000 years in the name of Blaskfield; and about that time Blanco paid some arrears of taxes upon the premises'and entered upon them and built houses upon the same and continued in possession until his death. It was also found that Blanco had the letter recorded in Kings county, but not until more than a year after he had received it. On the other hand, it appears that Blanco had, almost two years prior to the receipt of the letter, and on the.81st of May, 1870, purchased these very premises in the name of Blaskfield upon a tax sale made by the collector of taxes for the non-payment of two different taxes, and had paid the money thereon, and the time for redemption would expire on the 81st of May, 1872. It also appears that Jackson was embarrassed and had no money to redeem the lands. That these lands'' were part of a much larger tract, the title to all of which was in almost inextricable confusion, owing, among other things, to sales' for unpaid taxes, and that Blanco had himself, through one Cassidy, purchased the lands at the foreclosure sale prior to 1869, when Wing bought, but that he had been relieved from his purchase because of what seemed an incurable, or at least a grave defect in the title, caused by a deed from Jackson to a man named Andrews of all this property, the effect of which was then in litigation, and also caused by numerous tax sales for unpaid taxes in a great number of different years. It did not conclusively appear that Blanco had, prior to the letter of March 11, 1872, bid off the property at sales for unpaid taxes at the request of Jackson or upon any understanding with him. And no such fact was found by the trial court.
The letter of March 11, 1872, finds Blanco with two certificates *272 from the collector of taxes in Blaskfield’s name, but of which he was owner, covering this property, and by reason of which he would be entitled in a little over two months to leases of the property for 1,000-years, unless in the meantime redeemed by Jackson, who was wholly unable to do it, or by some one in his behalf. Then we find that a few days after the expiration of the time for redemption, none having taken place, the collector gives to Blaskfield, in other words to Blanco, the leases to which he is entitled, and Blanco, as the evidence of Dougherty shows, began to build on the premises in June, 1872, or at the time he received his leases thereof for 1,000 years. The letter allowed him to build on the property buildings of but one story high, and not costly. He in fact built them two stories high, at the expense of several thousand dollars. I have not given all the evidence upon this point, but enough to show that different inferences might be drawn therefrom. The question is, did Blanco go into possession and build on these premises under the letter of Jackson of 1872, construing it as a contract and intending to accept it, and did he under that contract and upon the strength of it pay other taxes and expend moneys in building, or did he enter upon such premises by virtue solely of the leases, regardless of any agreement or understanding with Jackson ? This was a matter for the decision of the trial court, .and in order that the defendant might avail himself of the fact it was incumbent upon him either to procure a finding to the effect that Blanco entered under the agreement, or else to prove it by sufficient and uncontradicted evidence, and then except to the refusal by the court of his request to so find. The court refused his request, and he has excepted to such refusal, but he has not proved the fact by uncontradicted evidence, and hence his exception raises no question of law for us to review, and the case must be decided without any finding that Blanco made any agreement with Jackson, or that his possession was by virtue of any understanding with him, or that it was any other than the usual possession following upon the entry under tax leases. Unless Blanco entered under some understanding with Jackson which entitled him to notice of any further proceedings ■ in the foreclosure action, it follows of course that a failure to give any notice to him would have no effect upon the validity of the orders in question, and the onus rested with the defendant to show the facts upon which the necessity for notice depended. This he has failed to do.
The knowledge of either Wing or Otis, or both, of the existence of the letter of March, 1872, and that Blanco was in possession of of the premises, and had built on them, is wholly unimportant um less Blanco had entered into possession under the alleged agreement. In the absence of such finding, their knowledge of the letter was immaterial.
I have not heretofore remarked upon the facts of the assignment of the bond and mortgage and decree of foreclosure by Wing to Shepard, and subsequently by Shepard to the present plaintiff, the son of Wing, or the assignment by the receiver of the elder Wing to the present plaintiff of all his interest in the same matters. I *273 have not deemed them at all important upon the questions at issue, certainly not upon the question which I have discussed, and which lies at the base of the defendants’ defense.
The decree for the foreclosure and sale of the premises was not outlawed after twenty years. The lien acquired upon real property by the docketing of a money judgment expires by the statute in ten years, Code, § 1251, and the amount of money decreed to be paid by a defendant in such a judgment may be presumed to have been paid after the expiration of twenty years from the time when it was docketed, except as provided by statute. Code, § 376. But decrees of courts of equity, otherwise than for the payment of money, do not expire by reason of the passage of any number of years, and the question whether they will be enforced after a long time has elapsed is one for the court to decide upon a consideration of all the facts. Van Rensselaer v. Wright, 121 N. Y., 626; 31 N. Y. State Rep., 897. And its decision upon such a question is not generally appealable to this court.
There can be no doubt either of the power of the court to make an order after the entry of a decree of foreclosure providing for carrying the same out after the death of the defendant mortgagor, and without reviving the action against his heirs or representatives. Harrison v. Simons, 3 Edw. Ch., 394: Hays v. Thomae, 56 N. Y., 521.
This covers all we think it necessary to say regarding the defects of the title of the plaintiff. He made out a good prima facie case entitling him to the possession of the premises, and the defendant failed to impeach that title by showing any radical defect therein consequent upon the omission of any necessary step in the foreclosure proceedings. "We say this with full knowledge of the claim defendant makes that the bid of Cassidy in the foreclosure proceedings, and which was made prior to the one made by Wing, was never set aside or its force destroyed, and that hence the bid of Wing .was wholly irregular and void. But the bid of Cassidy which he assumed to assign and which has come to the defendant conveys no right. Cassidy was relieved from that bid long before he assumed to assign it, and before Wing purchased in 1869. The criticism of the counsel for the defendant that the order did not relieve Cassidy from his bid, but only directed the payment by the referee to him of the amount of his deposit, is not well founded. The plain and undoubtedly the intended effect of the order was to relieve Cassidy from his bid and it accomplished that purpose.
The defendant, however, sets up the leases which Blanco bought and which the defendant has acquired, as furnishing him with a title to the premises in question, first by their inherent effect, and if that be insufficient, then by estoppel. To discuss the latter ground first, it will be noticed that there is no finding of any fact which would estop Jackson, if alive, from contesting their validity, much less any which would estop the plaintiff herein. The estoppel 'claimed by the defendant must rest upon the existence of the very facts already spoken of, that Blanco purchased the leases *274 under an agreement with Jackson that he should purchase and enter under them and retain possession during their term. But the fact that lie purchased them under this alleged agreement is wanting, and hence the foundation for the estoppel does not exist.
Upon the question of the validity of the leases, defendant says they are made, by the charter of Brooklyn in existence when they were executed, evidence of the regularity of the sale and all other proceedings, and he states that there is no evidence in contradiction which takes away the presumption created by the statute. That the leases are, in fact, invalid is substantially without denial. The denial is that there is any evidence in the case which shows-it and hence that defendant is entitled to the benefit of the presumption of regularity.
Upon an inspection of the record it is plainly apparent that the leases were never even offered in evidence for the purpose of proving a valid title by virtue of their own force. They were put in evidence for the purpose of identifying them, if possible, as the leases referred to by Jackson in his letter to Blanco, and to found the claim of estoppel upon, already referred to, by showing that Blanco bought them at the request of Jackson and upon his promise that the premises should be held by Blanco as long as the term named in them. This view is strengthened by referring to defendants’ ninth request to find, in which he asks the court fi> find that the leases were irregular and invalid, except in so far as they were ratified by Jackson. This shows the theory upon which the case was tried and prpbably the reason why none of the facts was shown rendering the leases invalid. It is quite too late now to abandon the theory of the trial upon which the leases were put in evidence and to take ground which is directly opposite to that theory and to the request to find made by the defendant, even though such request was, in its entirety, refused.
We must still proceed upon the theory of the invalidity of the leases as assumed upon the trial by both parties, and this theory shows no title to the premises in the defendant.
We have looked carefully at all the other questions raised by the counsel for the defendant in his able argument and have come-to the conclusion that none is sufficient to warrant a reversal of this judgment.
For the reasons already stated, it must be affirmed, with costs.
All concur.